WRIGHT MACHINE CORPORATION *vs.*
SEAMAN-ANDWALL CORPORATION.

Worcester.    November 7, 1973. — March 1, 1974.

Present:   TAURO, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Res Judicata. Constitutional Law,* Full faith and credit.

Where an action brought in New York by the buyer of a business seeking relief for alleged fraudulent misrepresentations made by the seller and the seller's own New York action on a note given by the buyer were consolidated and resulted in summary judgment for the seller, and where a subsequent Delaware action by the seller against the buyer on

the New York judgment and the buyer's counterclaim alleging fraudulent misrepresentations by the seller resulted in summary judgment for the seller on the basis that there was no material factual dispute raised by the counterclaim which had not been "finally adjudicated and brought to judgment in the New York action" and made res judicata thereby, the full faith and credit clause of the Federal Constitution and the doctrine of res judicata barred the buyer from maintaining an action in Massachusetts against the seller based on the same claims of fraudulent misrepresentation. [687-696]

CONTRACT. Writ in the Superior Court dated May 16, 1969.

The action was heard by *Meagher,* J., on a motion for judgment.

*Richard A. Robinson* for the plaintiff.

*William J. LeDoux* for the defendant.

QUIRICO, J.    This case is the third proceeding between Wright Machine Corporation (Wright) and Seaman-Andwall Corporation (Seaman) relating to the 1966 sale of Seaman's aluminum coating and steel siding business to Wright. The previous actions were brought in New York and Delaware and resulted in final judgments for Seaman. The question before us is whether Wright's present Massachusetts action against Seaman for breach of contract is barred by these prior proceedings under the doctrine of res judicata and the requirements of the full faith and credit clause of the United States Constitution, art. 4, § 1.

In June, 1966, Wright entered into a written agreement with Seaman for the purchase of Seaman's business assets and assumption of its business liabilities. The agreement required Wright to make certain immediate payments in cash and to execute a $250,000 mortgage note which provided for ten annual payments of principal of $25,000 and semiannual payments of interest. The note was guaranteed by B. S. F. Company, Edward Krock and Victor Muscat.

In July, 1967, Wright brought an action in the Supreme Court of the State of New York, New York County, against Seaman and its parent corporation for fraud, breach of contract and rescission. Wright's complaint alleged that in order to induce Wright to enter into the agreement of sale,

Seaman had fraudulently misrepresented the value of its inventory and accounts receivable and failed to disclose certain of its liabilities, and that it had not carried out an obligation under the contract to reimburse Wright for certain expenses.

When Wright failed to pay the first annual instalment of $25,000 which became due on the mortgage note in June, 1967, Seaman exercised its right under the note to accelerate its maturity. In September, 1967, Seaman commenced an action against Wright, the B. S. F. Company, Krock and Muscat[1] for the full amount of the note with interest. Seaman's action was also brought in the Supreme Court of the State of New York, New York County, by a motion for summary judgment in lieu of a complaint pursuant to the New York Rules of Civil Practice, Rule 3213.[2]

Wright moved to consolidate its action against Seaman for breach of contract and rescission with Seaman's action on the note. It also opposed the latter's motion for summary judgment with an affidavit of defence based almost entirely on the same allegations of misrepresentation contained in its own complaint. The New York Supreme Court denied Seaman's motion for summary judgment and granted Wright's motion to consolidate. Seaman appealed that portion of the court's order denying its own motion but did not appeal the granting of Wright's motion to consolidate.

The Appellate Division of the New York Supreme Court reversed the order of denial and granted Seaman's motion

---

[1] Since only Wright is involved in the Massachusetts proceedings against Seaman, the three guarantors will not be mentioned hereafter in our discussion of the New York and Delaware proceedings at issue, although some of them were parties therein.

[2] New York Civil Practice Law and Rules, § 3213, as in effect in September, 1967, provided in part: "When an action is based upon a judgment or instrument for the payment of money only, the plaintiff may serve with the summons a notice of motion for summary judgment and the supporting papers in lieu of a complaint. The summons served with such motion . . . shall require the defendant to submit answering papers on the motion . . . .. If the motion is denied, the moving and answering papers shall be deemed the complaint and answer, respectively, unless the court orders otherwise." A 1969 amendment changed the word order in the first sentence for purposes of clarification, but the substance of the rule remained the same.

for summary judgment.[3] In its opinion the Appellate Division stated that the proof of defences raised by Wright was "fatally deficient both as to form and substance," and held that all Wright's allegations of fraud were "either precluded by the terms of the contract of sale or lack any substantiation of the conclusions asserted." Judgment was entered for Seaman on January 29, 1969, for the full amount of the note with interest. Wright appealed to the New York Court of Appeals which affirmed the Appellate Division's decision without opinion.[4]

On February 10, 1969, Seaman commenced an action on this judgment against Wright in the Superior Court of New Castle County, Delaware.[5]

On May 16, 1969, Wright began another action for breach of contract against Seaman in the Superior Court for the County of Worcester in Massachusetts. In its declaration it alleged that Seaman was liable for: (a) misrepresenting the value of its inventory; (b) misrepresenting the value of its accounts receivable; (c) failing to disclose certain contractual liabilities; (d) failing to disclose the existence of specific contractual obligations to the Logan-Long Company; (e) misrepresenting and failing to disclose the amount of product liability claims pending against it; and (f) failing to reimburse Wright under the terms of the agreement for satisfaction of customer claims. A comparison of these allegations with those raised in the New York case shows that with the exception of the Logan-Long contracts the claim in each case was essentially the same; each arose from the 1966 sale transaction and comprised specifications of fraudulent representations allegedly made in the agreement of sale.

In February, 1970, Wright filed an answer and a counterclaim in Seaman's Delaware action. The counterclaim was again based on the allegedly fraudulent representations made

[3] *Seaman-Andwall Corp.* v. *Wright Mach. Corp.* 31 App. Div. 2d (N. Y.) 136 (1968).

[4] 29 N. Y. 2d 617, 619 (1971).

[5] Wright states that Seaman also commenced actions on the judgment in Wisconsin and the Central District Court of Worcester, Massachusetts, but neither action appears to have been prosecuted and they are not relevant here.

Wright Machine Corp. *v.* Seaman-Andwall Corp.

by Seaman in connection with the sale of its business and was virtually identical with the declaration in Wright's Massachusetts action. Wright also filed a motion to stay the Delaware action until after the final determination of the Massachusetts proceedings.

The Delaware Court on July 16, 1970, before the Massachusetts court had acted, rendered a decision which denied Wright's motion to stay and granted Seaman's motion for summary judgment on the New York judgment. The court stated that "there . . . [was] no material factual dispute growing out of defendants' counterclaim which was not finally adjudicated and brought to judgment in the New York action," that the principles of res judicata required the Delaware court to hold that further proceedings on the matters raised in the counterclaim were barred in Delaware by virtue of the New York judgment, and that such judgment was entitled to full faith and credit. It does not appear that Wright appealed this decision.

In the Massachusetts proceedings brought by Wright, Seaman filed an answer which, as later amended, set out as an affirmative defence that Wright's action was barred by the New York and Delaware judgments against it. The two parties then jointly filed a motion to have the defence of res judicata heard in advance of a trial on the merits. The parties stipulated that for the purpose of such hearing, the New York and Delaware judgments were final and that the record would consist of Wright's case on appeal to the New York Court of Appeals and the Delaware pleadings and opinion of the Delaware Superior Court. Seaman moved for judgment, claiming that the pleadings and documents introduced as part of the stipulated record showed that there was no issue of material fact. Based on these documents and the rest of the stipulated record the trial judge entered an order which upheld Seaman's defence of res judicata and ordered judgment accordingly on Seaman's motion. The case is before us on Wright's exceptions to this action.

We hold that the judge was correct. Despite the complex procedural situation presented in this case, covering, as it

does, overlapping actions brought and decisions rendered in three different jurisdictions, the principles of res judicata and the requirements imposed by art. 4, § 1, of the United States Constitution clearly dictate that we give full faith and credit to the Delaware judgment. We therefore hold that Wright is barred from maintaining an action in Massachusetts on the same claim which the Delaware court held was barred by the prior New York judgment.

The doctrine of res judicata is founded on the necessity for finality in litigation. "Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Baldwin* v. *Iowa State Traveling Men's Assn.* 283 U. S. 522, 525 (1931). *Stoll* v. *Gottlieb,* 305 U. S. 165, 172 (1938). *Durfee* v. *Duke,* 375 U. S. 106, 113-114 (1963). *Browne* v. *Moran,* 300 Mass. 107, 110-111 (1938). Considerations of fairness and the requirements of efficient judicial administration dictate that an opposing party in a particular action as well as the court is entitled to be free from continuing attempts to relitigate the same claim. For this reason the principle of res judicata requires that a valid and final personal judgment rendered by a court of competent jurisdiction over the parties and the subject matter serve as a bar to any further proceedings between the same parties on the same claim. Furthermore, a party cannot avoid this rule by seeking an alternative remedy or by raising the claim from a different posture or in a different procedural form. *Cromwell* v. *County of Sac,* 94 U. S. 351, 352-353 (1876). *Franklin* v. *North Weymouth Coop. Bank,* 283 Mass. 275, 280 (1933). *Sandler* v. *Silk,* 292 Mass. 493, 498 (1935). *Iowa-Wisconsin Bridge Co.* v. *Phoenix Fin. Corp.* 41 Del. 527, 544-546 (1942), cert. den. sub nom. *Phoenix Fin. Corp.* v. *Iowa-Wisconsin Bridge Co.* 317 U. S. 671 (1942). See Restatement: Judgments, § 45 (1942).[6] The

---

[6]See also the statement of this rule in the proposed draft of the second Restatement of Judgments, Restatement 2d: Judgments (Tent. draft No. 1, March 28, 1973), § 45, and accompanying Reporter's Note. For a discussion of the scope of a "claim," see *Id.* Title D, Introductory Note, p. 76, and § 61, comments a, b.

effects of the res judicata doctrine extend to judgments rendered in other States through the full faith and credit clause of the Constitution, which requires that "the judgment of a State court which had jurisdiction of the parties and the subject-matter in suit, shall be given in the courts of every other State the same credit, validity and effect which it has in the State where it was rendered, and be equally conclusive upon the merits . . .." *Roche* v. *McDonald,* 275 U. S. 449, 451-452 (1928).

As mentioned, Wright's allegations in its declaration here of fraudulent misrepresentation constituting breaches of contract are materially the same as the allegations in its New York action and almost identical with the specifications of its counterclaim in Delaware. The parties in the three actions are clearly the same. Wright does not dispute these facts but argues that nevertheless neither the New York nor the Delaware judgment bars the present action. Its argument is as follows. The New York judgment is no bar because under New York law the judgment on Seaman's note would not preclude Wright from prosecuting its action for breach of contract and fraud in that State; if New York would not apply the res judicata doctrine in this instance, Massachusetts should not; the Delaware judgment does not bar the present action because (1) it was based on an erroneous construction of the prior judgment in New York, (2) it was not "on the merits," and (3) its holding that the New York judgment was a bar under the doctrine of res judicata was expressly limited to the effect of that judgment in Delaware proceedings and does not affect an action brought in Massachusetts. We consider each of Wright's contentions in turn.

1. In connection with Wright's assertions about the continuing viability of its New York action, we note that in every New York case Wright cites to show that the allowance of Seaman's motion for summary judgment was without prejudice to a later trial of Wright's consolidated action, express directions were given by the court about the disposition of any counterclaims or consolidated cases involved; the Appellate Division's opinion in Wright's case included

no such direction, and, as noted before, it characterized Wright's defences as "fatally deficient both as to form and substance." See *Werring* v. *Selig,* 241 App. Div. (N. Y.) 67, 71-73 (1934), affd. 266 N. Y. 566 (1935); *Riley* v. *Southern Transp. Co.* 278 App. Div. (N. Y.) 605 (1951); *Eidelberg* v. Zellermayer, 5 App. Div. 2d (N. Y.) 658, 662-663 (1958), affd. 6 N. Y. 2d 815 (1959). See also Restatement 2d: Judgments, *supra,* § 56.1 (2) and comment f. However, because of the later Delaware judgment and Wright's arguments concerning its effect, we are not required to decide whether the New York judgment would bar Wright's action in Massachusetts, and we do not do so.

2. As noted, Wright argues that the Delaware court erroneously interpreted the New York judgment. Wright states that by virtue of its holding that the New York judgment barred Wright's counterclaim in Delaware, the Delaware court afforded such judgment a greater res judicata effect than it would have in New York, that the Delaware judgment was inconsistent with the New York judgment, and that it therefore need not be followed in Massachusetts. Our discussion above about Wright's New York action indicates that there are doubts about the correctness of Wright's assertion. However, assuming that the Delaware judgment was in fact inconsistent with the New York judgment, as Wright contends, Wright's conclusion that it need not be followed in Massachusetts finds no support under the accepted principles of res judicata.

It is the general rule that when two different actions involving the same parties and the same claim are pending at the same time, the final judgment first rendered is entitled to res judicata effect in the second action, regardless of which was commenced first. Restatement: Judgments, *supra,* § 43. Restatement 2d: Judgments, *supra,* § 41.1. However, when two consecutive judgments have been rendered in actions involving the same claim and parties which are inconsistent with each other, and a third action is subsequently brought involving such claim and parties once again, its outcome is controlled by the later of the prior judgments, regardless of

whether that judgment was based on a mistake of law, including an erroneous interpretation of the first judgment.[7] *Treinies* v. *Sunshine Mining Co.,* 308 U. S. 66, 76-77 (1939). *Morris* v. *Jones,* 329 U. S. 545, 552 (1947). *Sutton* v. *Leib,* 342 U. S. 402, 408 (1952). *Helgesson* v. *Helgesson,* 196 F. Supp. 42, 46 (D. Mass. 1961), affd. 295 F. 2d 37 (1st Cir. 1961). See Restatement: Judgments, *supra,* § 42, comments a, b; Restatement 2d: Judgments, *supra,* § 41.2. Cf. Ginsburg, Judgments in Search of Full Faith and Credit: The Last-in-Time Rule for Conflicting Judgments, 82 Harv. L. Rev. 798, 800, 811-830 (1969). Once it appears, as it does here without dispute,[8] that a court has jurisdiction over the person and the subject matter in a particular action, ". . . the full faith and credit clause of the Constitution precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based . . .. Whatever mistakes of law may underlie the judgment . . . it is 'conclusive as to all the *media concludendi.' Fauntleroy* v. *Lum* . . . [210 U. S. 230 (1908)], at p. 237." *Milliken* v. *Meyer,* 311 U. S. 457, 462 (1940). *United Natl. Bank* v. *Lamb,* 337 U. S. 38, 41-42 (1949). *Sutton* v. *Leib,* 342 U. S. 402, 408 (1952). *Robbins* v. *Robbins,* 343 Mass. 247, 250 (1961). See Restatement: Judgments, § 45, comment f (1942); Restatement 2d: Judgments (Tent. draft No. 1, March 28, 1973), § 45, comment d; Restatement 2d: Conflict of Laws, § 106 (1971).

Therefore, even if we assume that the Delaware court did misinterpret the scope of the New York judgment and reach an inconsistent result, we must still look to the Delaware

---

[7]It is true that when a plaintiff obtains a judgment on a judgment, as Seaman did in Delaware, the first judgment is not merged in the second and the plaintiff is entitled to enforce either judgment until one is satisfied. See Restatement: Judgments, *supra,* § 47, comment k; Restatement 2d: Conflict of Laws, § 95, comment c (1971). In the case before us, however, we are not actually considering the res judicata effect of the two judgments in favor of Seaman on the note; rather we look at the effect of the two judgments rendered against Wright on its contract claim, the first in its consolidated action in New York and the second on its counterclaim in Delaware. The principles stated in the text of the opinion would still apply to these judgments.

[8]No contention was raised that the Delaware or the New York court lacked jurisdiction over the cases before them, nor could such a contention prevail. The parties clearly appeared in both proceedings before courts of general jurisdiction.

judgment to determine whether there has been a valid and conclusive adjudication of the claim involved in the case before us.[9]

3. In relation to the Delaware judgment, Wright also argues that the Delaware Superior Court did not pass "on the merits" of Wright's claim but held only that. the questions raised therein had been previously adjudicated in New York. It then states that since a judgment is res judicata in a subsequent proceeding only if it is rendered "on the merits," the Delaware judgment does not bar Wright's action in Massachusetts. We disagree with Wright's analysis of the Delaware decision.

The full faith and credit clause requires us to look to Delaware law to determine how that State would treat the summary judgment its court granted to Seaman in terms of the doctrine of res judicata, so that we may give the Delaware judgment the same force and effect as it would be given there. *Roche* v. *McDonald,* 275 U. S. 449, 451-452 (1928). *Magnolia Petroleum Co.* v. *Hunt,* 320 U. S. 430, 438-440 (1943). Cf. *Ford* v. *Ford,* 371 U. S. 187, 192-193 (1962). See Restatement 2d: Conflict of Laws, *supra,* § 93, comment b; § 95, comments b, c, e; § 96, comment d. The question, then, is whether Delaware holds or would hold that a summary judgment granted on the basis of res judicata and full faith and credit[10] operates as a binding adjudication of the merits of the claim raised which would bar another action in that State involving such claim. To resolve this question, we briefly consider some characteristics of the type of summary judgment which does and the type of judgment (whether or not a summary judgment) which does not constitute a determination on the merits of a claim and a bar to subsequent proceedings involving the same parties and the same claim.

---

[9]Of course, if the Delaware court correctly construed the effect of the New York judgment so that both judgments are in harmony on the issue of res judicata, Wright will not be harmed if we apply nevertheless the last-in-time rule that governs inconsistent judgments and turn to the Delaware judgment to discover if Wright's Massachusetts action is barred.

[10]Delaware permits the bringing of a motion for summary judgment under Rule 56 of the Delaware Superior Court (1971), which is patterned after Federal Rules of Civil Procedure, Rule 56, 28 U. S. C. (1970).

Wright Machine Corp. *v.* Seaman-Andwall Corp.

Federal and State courts have held overwhelmingly that a summary judgment operates as a binding adjudication of a claim when it is based on a court's determination that no genuine dispute exists as to any material fact and the moving party is entitled to judgment as matter of law; in such a case the court has examined the pleadings and affidavit (if any) in opposition to the motion for summary judgment and has determined that even if the facts set forth therein were true, they would not constitute a legally sufficient defence to the action, so that a trial designed to litigate these facts would be needless. When a summary judgment is based on such a determination it must be given res judicata effect in any subsequent proceeding involving the same parties and the same claim. See *Stokke* v. *Southern Pac. Co.* 169 F. 2d 42 (10th Cir. 1948); *Small Business Admn.* v. *Taubman,* 459 F. 2d 991 (9th Cir. 1972); *Sopp* v. *Gehrlein,* 236 F. Supp. 823, 825 (W. D. Pa. 1964); *Hubicki* v. *United Steelworkers of Am.* 344 F. Supp. 1247 (M. D. Pa. 1972); *Radice* v. *Antonacci,* 120 Ill. App. 2d 478, 482-483 (1970); *Crown Point Community Sch. Corp.* v. *Richards,*     Ind. App.     (1972)[a]; *Mettee* v. *Boone,* 251 Md. 332, 340-341 (1968); *Werring* v. *Selig,* 241 App. Div. (N.Y.) 67, 71-73 (1934), affd. 266 N.Y. 566 (1935).[11] Compare *Stuhl* v. *Tauro,* 476 F. 2d 233, 234 (1st Cir. 1973); Mass. Rules of Civil Procedure, Rule 56, effective July 1, 1974; G. L. c. 231, § 59. See also Restatement 2d: Judgments (Tent. draft No. 1, March 28, 1973), § 48, comments a, g; Title C, Introductory Note, p. 59; § 56.2.

On the other hand, a judgment will not operate as res judicata in another action involving the same parties and claim if it is based on grounds usually raised in abatement, such as lack of jurisdiction, failure to join a necessary party, insufficiency of process or of service of process, failure to meet a precondition for bringing suit, and voluntary nonsuit

[11]Several of these cases also make clear that the defence of res judicata, based on a prior summary judgment, may itself be raised by a motion for summary judgment in a subsequent proceeding. *Sopp* v. *Gehrlein, supra. Hubicki* v. *United Steelworkers of Am., supra.* See annotation, 95 A. L. R. 2d 648 (1964). Such a procedure was followed by Seaman in the Delaware action and again in Massachusetts.

[a]290 N.E. 2d 449, 453 (1972).

or dismissal without prejudice. See e.g., *Smith* v. *Ford Gum & Mach. Co. Inc.* 212 F. 2d 581 (5th Cir. 1954) (lack of jurisdiction); *Saylor* v. *Lindsley,* 391 F. 2d 965, 968-969 (2d Cir. 1968) (failure to file security-for-costs bond); Federal Rules of Civil Procedure, Rule 41 (b), 28 U. S. C. (1970); Restatement: Judgments, § 48 (1942): Restatement 2d: Judgments, *supra,* § 48.1; Restatement 2d: Conflict of Laws, *supra,* § 110. The rationale for this result is that the dismissal of the claim is based solely on preliminary questions of jurisdiction or related threshold concerns and the court has not reached the substantive issues involved. If the claim were later brought in a court of competent jurisdiction where all such preliminary concerns were satisfied, nothing in the former action would have related to the substantive merits of the claim and the former action would not bar the second court from considering them. See 50 C. J. S. Judgments, §§ 626, 627; 6 Moore, Federal Practice (2d ed.), par. 56.03.

When a court grants a summary judgment on the grounds of res judicata, it has had to look beyond initial issues of, for example, its jurisdiction or the proper joining of parties, and has necessarily had to consider the substantive allegations raised by both parties. Thus, the Delaware Superior Court's opinion before us in this case clearly indicates that the court examined the substance of Wright's counterclaim, determined from the face of the record that there was no factual dispute arising therein which had not been adjudicated in New York, and concluded that under the principles of res judicata and full faith and credit, Seaman was entitled to judgment as matter of law. In other words the Delaware court concluded in effect that even if all the allegations of Wright's counterclaim were established, Wright failed to state a legally sufficient claim and that a trial to determine the truth of those allegations would be futile. A summary judgment granted for such reason is no different from the summary judgments held to operate as res judicata in *Stokke* v. *Southern Pac. Co., supra,* and other cases cited above. Cf. *Hartmann* v. *Time, Inc.* 166 F. 2d 127, 138-140 (3d Cir. 1947), cert. den. sub nom. *Time, Inc.* v. *Hartmann,* 334

U. S. 838 (1948).

It does not appear that the highest court of Delaware has considered the application of the res judicata doctrine to a summary judgment; the parties in this proceeding cited no such case to us, and we discovered none. However, in light of the substantial uniformity of authority that a summary judgment is entitled to res judicata effect when granted on the determination that no issue of material fact exists and the moving party is entitled to judgment as matter of law, we assume that Delaware would adopt this rule as well. The Delaware summary judgment granted on the basis of res judicata is in substance the same type of determination. We therefore assume further that Delaware would apply the rules of res judicata to the decision of its Superior Court and hold that the summary judgment granted to Seaman there barred any future actions in Delaware between Wright and Seaman on the same claim. Given these assumptions, the doctrine of full faith and credit requires us to hold that the Delaware judgment precludes Wright from litigating here the same issues raised by its counterclaim in that action.

4. In arriving at this conclusion we have considered and have rejected Wright's further argument that the Delaware decision held only that the New York judgment was a bar to further related proceedings in Delaware courts and did not attempt to determine the effect of the judgment in any other State, including Massachusetts. Even if the Delaware court's opinion could be understood to have the meaning suggested by Wright, we could not refuse to give full faith and credit to its adjudication of Wright's counterclaim in Wright's action before us here; the claim involved in each proceeding is identical, the only difference being that in one Wright is the defendant and in the other it is the plaintiff. The doctrine of full faith and credit derives from constitutional commands and it cannot be set aside by a particular court's statements about the binding effect of its decision. See *Riley* v. *New York Trust Co.* 315 U. S. 343, 348-349 (1942); *Union Natl. Bank* v. *Lamb,* 337 U. S. 38, 42 (1949); Restatement 2d: Conflict of Laws, *supra,* § 93, comments a, b; Reese and

Johnson, The Scope of Full Faith and Credit to Judgments, 49 Col. L. Rev. 153, 161 (1949). As we have stressed, as long as Delaware had jurisdiction over the parties and the subject matter, its decision is binding on us and we cannot examine the legal principles or reasoning set forth therein.

Wright complains it has never had "a hearing on the merits of its claim" for breach of contract. We do not agree. Wright has brought this claim before two courts which have considered the allegations of its claim and have rejected them. Wright's remedy for any errors committed lay in appeal or other direct proceedings to set aside those judgments. If its consolidated action in New York could still have been tried after the decision of the New York Court of Appeals, Wright should have resorted to the New York courts; if the Delaware Superior Court erroneously denied Wright the right to litigate its counterclaim, it should have appealed the decision in that State. Instead, both the New York and Delaware proceedings went to final judgment. By reason of the full faith and credit clause Wright is not entitled to reopen its case and litigate the same claim in Massachusetts. *Treinies* v. *Sunshine Mining Co.* 308 U. S. 66, 77-78 (1939). *Morris* v. *Jones,* 329 U. S. 545, 552 (1947).

*Exceptions overruled.*