Doerfer, J.
INTRODUCTION
The plaintiff, Citizens Bank of Massachusetts (Citizens), brought this action in an attempt to recover more than $1.5 million owed by defendant Bahig Bishay and various trusts and corporations controlled by him under a defaulted promissory note. This debt has since been repaid as a result of a Chapter 11 plan confirmed by the Bankruptcy Court on April 23, 1996. However, numerous counterclaims by Bishay against Citizens remain pending in this action. This matter is before the court on the parties’ cross-motions for summary judgment pursuant to Mass.R.Civ.P. 56(c). For the reasons discussed below, Citizens’ motion for summary judgment is ALLOWED in part and DENIED in part. Further, the defendants’ cross-motion for partial summary judgment is DENIED.
BACKGROUND
The undisputed facts as revealed by the summary judgment record are as follows. The defendant Bahig Bishay (Bishay) is the president and founder of Bishay Motors and Leasing, Inc. fka Bishay Motors, Inc. (Bishay Motors), a business that sells, leases and services Mercedes Benz and other luxury automobiles in East Walpole, Massachusetts. Bishay is a trustee and beneficiary of the Old Post Realty Trust (Old Post Trust), which holds 13.5 acres of registered land located on Old Post Road in Sharon and Walpole, Massachusetts. Bishay is also a trustee and beneficiary of the Commonwealth Realty Trust (Commonwealth Trust), which holds eight parcels of land on or near Commonwealth Avenue in Boston, Massachusetts.
Bishay transacted a great deal of financial business with Citizens’ predecessor in interest, Neworld Bank (Neworld), including the borrowing of a line of credit to fund inventory for Bishay Motors and to support his numerous real estate investments. On June 8, 1988, Bishay obtained a loan from Neworld in a principal amount of $2,560,000, as evidenced by a Note and Credit Agreement. The Note, which is dated June 8, 1988 and entitled “Demand Note,” provided in relevant part:
For value received, I, Bahig Bishay of Westwood, Massachusetts, (hereinafter called “Maker”) promise to pay, ON DEMAND, to NEWORLD BANK FOR SAVINGS ... the lessor [sic] of (a) $2,560,000.00 or (b) the aggregate amount of all loans outstanding by Payee under the Credit Agreement (the “Credit Agreement”) of even date between the Payee and the Maker together with all interest due thereunder and all other charges due Payee.
Until demand for payment in full is made, this Note shall be paid as follows: interest only from the date of disbursement hereunder ... which interest shall be payable monthly in arrears commencing on July 8, 1988, and on the 8th day of each month thereafter until demand for payment in full is made at which time the entire principal balance, accrued interest, and such other charges as maybe due and payable hereunder or under any other instrument given to secure payment hereof, shall be immediately due and payable . . .
The Maker agrees to pay all charges of the holder hereof in connection with the collection and enforcement of this Note, including reasonable attorneys fees.
The Credit Agreement of the same date, entitled “Credit Agreement (Revolving Demand),” provided in relevant part:
Subject to the terms and conditions hereof, and until demand for payment in full is made, the Borrower may from time to time not later than June 8, 1989 borrow, repay and borrow from the Bank and the Bank will make such advance of funds (a “Loan,” or collectively “Loans”) to the Borrower not exceeding in the aggregate of $2,560,000.00 at any one time outstanding (the “Credit Availability”) in such amounts, and for such duration as Borrower shall have specified to Bank in a Loan Request. In any event all amounts due Bank unless sooner demanded by Bank, shall be paid on or before June 8, 1989 . . .
Upon the occurrence of one or more of the defaults above specified, at any time thereafter while such Event of Default is continuing, the Bank may by notice in writing to the Borrower declare the Note to be, and it shall thereupon become, forthwith due and payable together with all accrued interest to such date and any and all charges to which the Bank would be entitled hereunder, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived.
The Note and Credit Agreement were secured by unlimited and unconditional guaranties from Bishay Motors, Old Post Trust, and Commonwealth Trust. Each guaranty provided in relevant part:
Upon any default by the Borrower in the full and punctual payment and performance of the Obligations, the liabilities and obligations of the Guarantor hereunder shall, at the option of the Bank, become forthwith due and payable to the Bank without demand or notice of any nature, all of which are expressly waived by the Guarantor. Payments by the Guarantor hereunder may be required by the Bank on any number of occasions . . . *244 The Guarantor further agrees, as the principal obligor and not as a guarantor only, to pay to the Bank forthwith upon demand, in funds immediately available to the Bank, all costs and expenses (including court costs and legal expenses) incurred or expended by the Bank in connection with this Guaranty and the enforcement hereof, together with interest on amounts recoverable under this Guaranty from the time such amounts become due until payment at the usual rate charged by the Bank in similar circumstances, but in no event less than 12% per annum . . .
The Note and Credit Agreement were further secured by a mortgage on real estate located at 75 Providence Highway in East Walpole, Massachusetts, the site of Bishay Motors, and a security interest in all assets of Bishay Motors.
Pursuant to the Credit Agreement, the entire debt became due and payable to Neworld on June 8, 1989, but Bishay failed to repay the loan by this date. Neworld thus entered into an agreement with Bishay on December 18, 1989 that extended the time for repayment so long as Bishay reduced the line of credit by atleast$l,700,000byMay31, 1990. OnMay31st, the parties entered into another extension agreement in which Neworld extended the time for repayment to August 31, 1990, in exchange for Bishay’s grant of additional security for the loan: a first mortgage on 13.5 acres of registered land located on Old Post Road in Sharon and Walpole, a second mortgage on his automobile dealership at 1095 Commonwealth Avenue in Boston, and a second mortgage on properly located at 5 Station Street in Brookline. In November of 1990, Neworld informed Bishay via letter that it intended to terminate its lending relationship with him through repayment of the loan.
Thereafter, on March 15, 1991, Neworld entered into an agreement that extended the time for repayment of the loan until December 31, 1991 but required Bishay to make monthly principal payments of $5,000. According to Neil T. O’Hurley (O’Hurley), the direct account officer who represented Neworld in its dealings with Bishay, this extension agreement converted Bishay’s line of credit from an “evergreen loan”[3] to a non-revolving term loan requiring monthly amortization of $5,000. Neworld and Bishay then entered into a series of additional agreements, each of which further extended the time for repayment of the loan.[4]
On August 10, 1993, Neworld and Bishay entered into yet another agreement extending repayment until June 30, 1994 but increasing the monthly principal repayments from $5,000 to $7,500. The following month, Bishay paid interest in the amount of $6,088.63 but requested a hold on the monthly principal reduction of $7,500. Thereafter, on April 18, 1994, Bishay wrote to O’Hurley and informed him that he was enclosing an interest payment of $14,058.91 but could not make the monthly principal reduction payments for May and June due to the cash flow shortfall caused in starting a new Isuzu business. O’Hurley responded by informing Bishay that he was in default of the August 6, 1993 agreement due to his failure to make the required principal payments.
Plaintiff Citizens Bank acquired Neworld Bank on April 14, 1994. On May 9, 1994, Citizens sent Bishay a letter stating that his failure to make the monthly principal payments was a default under the parties’ extension agreement and informing him that Neworld’s merger with Citizens did not affect his obligations under said agreement. The letter further stated that Citizens reserved all rights under the agreement and that Bishay’s obligations were due in full on June 30, 1994.
When Bishay failed to make the April and May principal payments, his account was turned over to Robert Bender (Bender) of Citizens’ loan workout group. Bishay informed Bender that he was attempting to refinance a first mortgage held by the FDIC on the 1095 Commonwealth Avenue property, which the FDIC had agreed to release at a 50% discount, and requested that Citizens loan him sufficient funds for this purpose. Citizens refused this request, and by certified letter dated June 14, 1994, accelerated the Note and made demand on Bishay and all other guarantors for immediate payment of all sums due under the Note and all related agreements. At that time, the Note had an unpaid principal balance of $2,330,660.25 and outstanding interest of $13,138.29. Bender contacted the FDIC to determine whether it was in fact prepared to compromise its debt as Bishay had represented. In an effort to protect Citizens’ secured interest in Bishay’s assets, Bender inquired as to whether the FDIC would allow Citizens to purchase the FDIC loan. The FDIC responded that it would sell the loan only if Bishay failed to pay the price agreed. Thereafter, on June 29, 1994, Bishay wrote to Citizens, alluding to inappropriate misconduct that Citizens had committed that could lead to liability. Further, in a letter dated July 14, 1994, counsel for Bishay asserted that Bender’s communications with the FDIC constituted an unfair and deceptive trade practice in violation of General Laws Chapter 93A.
A week later, on July 20, 1994, Bishay again wrote to Citizens, requesting that the bank grant him an additional forbearance period and agree to subordinate its secured mortgage on the 1095 Commonwealth Avenue property to a two million dollar loan to be given by Framingham Savings Bank for the purpose of obtaining a release of the FDIC mortgage for $1.2 million and renovating the property. Citizens refused to subordinate its mortgage on the property unless Bishay agreed to a variety of terms acceptable to the bank, including a general release of any and all claims Bishay might have against Citizens.
*245 Thus, on September 16, 1994, Citizens entered into a Forbearance Agreement with Bishay; Old Post Trust; Commonwealth Trust; the U.S. Auto Exchange Group, Ltd. (Auto Exchange), an entity which operates the automobile business at Bishay’s Commonwealth Avenue property; and the 1095 Commonwealth Avenue Corporation, an entity which acquired property from the Commonwealth Trust. Under this Forbearance Agreement, Citizens withdrew its demand and extended the maturity date of the Note until July 31, 1995, at which time the entire remaining balance of the Note would become absolutely due and payable without notice. Citizens also agreed to subordinate its second mortgage position on 1095 Commonwealth Avenue to Framingham Savings Bank, enabling Bishay to finance and discharge the debt owed to the FDIC.
In exchange, Bishay agreed to pay down the outstanding principal by an amount of not less than one million dollars on or before January 31, 1995, to pay a $10,000 forbearance fee, and to pay the $5,314.85 in legal fees Citizens had incurred in connection with the Note, as well as any legal fees and expenses incurred by Citizens from July 1, 1994 forward. Further, Bishay agreed to pledge additional collateral to secure the Note, including among other things, an unlimited guaranty from Massachusetts Auto Group, Ltd. dba Bishay Isuzu, the Auto Exchange, and the Commonwealth Avenue Corp. dated September 16, 1994 (the 1994 Guaranty). In addition, Bishay Motors pledged as collateral fifteen antique automobiles. The Forbearance Agreement further provided that:
upon the happening of an event of default under any of the documents securing the Note, including, but not limited to, (a) failure to pay when due any installment of principal or interest which failure continues for fifteen (15) days after receipt of monthly bill or (b) upon the failure to observe or perform any of the agreements contained in this letter which failure continues for five (5) days after written notice from Citizens, all amounts outstanding under the Note and this letter shall be immediately due and payable in full. . .
You hereby waive, release and forever discharge Citizens and Neworld Bank, and each of their employees, officers, directors, and agents (collectively the “Banks”) from any and all claims, suits, actions or liabilities of any kind which you, Bishay Motors, or any entity controlled by you have arising out of relating to your or their relationships with the Banks arising prior to the date hereof including, without limitation, any allegation that Citizens dealt improperly with respect to the Commonwealth Avenue property.
Bisháy failed to make the monthly debt service payments under the Note and further failed to pay the one million dollars as required by the Forbearance Agreement. On February 8, 1995, Citizens amended the Forbearance Agreement to reduce the attorneys fees owed to $25,000 and extend the $1,000,0000 principal payment obligation to April 30, 1995 in exchange for an extension fee of $5,000 and payment of $75,000 from the sale of Bishay’s Beacon Street property. In March of 1995, Bishay sold 14 residential lots in Walpole and used the proceeds to pay $759,358.45 to Citizens in partial compliance of his principal paydown obligation. However, he made no further payments. On April 20, 1995, Citizens requested that Bishay liquidate or refinance certain of his assets and use the proceeds to pay down his debt, but Bishay refused. The following week, Citizens demanded that he turn over possession of the antique automobiles for sale by Citizens. Bishay refused to turn over the automobiles, inform Citizens of the location of the automobiles, or voluntarily sell the automobiles himself. Thereafter, by certified letter dated May 3, 1995, Citizens accelerated the Note and made demand on Bishay and all other guarantors for immediate payment of all sums due under the Note and related agreements. However, Bishay failed to repay the loan and refused several offers by Citizens to forbear legal action in exchange for Bishay’s voluntary liquidation of various collateral to pay down the loan and execution of a general release with respect to any and all claims against Citizens.
Accordingly, on June 9, 1995, Citizens commenced this action alleging in Counts I and II that Bishay breached the Note and Credit Agreement and the Forbearance Agreement; alleging in Counts III, IV and V that Bishay Motors, Old Post Trust and Commonwealth Trust breached their respective Guaranties; alleging in Count VI that Bishay Motors breached the Forbearance Agreement; and alleging in Count VII that Auto Exchange, Bishay Isuzu and Commonwealth Ave. Corp. breached the 1994 Guaranty. Citizens’ complaint sought all amounts due under the Note and Credit Agreement, including attorneys fees and all other costs of collection. In response, Bishay filed two counterclaims against Citizens alleging breach of the obligation of good faith and fair dealing and a violation of General Laws Chapter 93A.
Shortly thereafter, on July 25, 1995, Commonwealth Ave. Corp. filed a voluntary Chapter 11 petition in the Bankruptcy Court[5] and on September 19th, Bishay individually filed a voluntary Chapter 11 petition.[6] On April 23, 1996, following a two-day hearing, the Bankruptcy Court (Kenner, J.) issued a Confirmation Order in both bankruptcies over Bishay’s objections confirming a Chapter 11 plan of reorganization proposed by Citizens. The plan required Bishay to pay in full Citizens’ claim for principal in the amount of $1,582,315.11 and accrued pre-petition interest of $26,795.21 on or before December 27, 1996, plus any post-petition interest, attorneys fees and collection charges as the court may allow.
*246 Under the Note and related agreements, Citizens was entitled to its costs of collection, including attorneys’ fees. However, a dispute arose between Citizens and Bishay over the nature of the billing arrangement between Citizens and its counsel, Brown, Rudnick, Freed & Gesmer (BRFG). Citizens had repeatedly represented to the Bankruptcy Court that BRFG billed its regular hourly rates for the enforcement and collection of Bishay’s loan. During the course of the bankruptcy proceedings, however, Bishay discovered that Citizens had failed to disclose a billing arrangement whereby BRFG would charge Citizens a blended hourly rate unless the debtor at issue had the assets to pay the fees, in which case BRFG would charge its higher standard hourly rate.
On July 10, 1996, the Bankruptcy Court (Kenner, J.) held a hearing on Citizens’ fee application. The Court found that Citizens had misrepresented the billing agreement between itself and BRFG and that one Citizens’ officer, Steven Mastrovich, had intentionally deceived the Court as to the agreement. Citizens voluntarily agreed to reduce the fees sought to charge the lower blended rate, and to further reduce the award to account for duplicative entries in the billing records, resulting in a $21,692.50 reduction in the fees sought. Accordingly, the Court awarded Citizens $204,936.01 in fees and expenses and $11,175 for appraisal expenses. In addition, the Court entered a sanction against Citizens in the amount of the reasonable attorneys fees incurred by Bishay in litigating the blended-rate agreement issue, and denied Citizens future reimbursement for the time spent in conjunction with applying for fees and costs under the Note.
In the present Superior Court action, Citizens filed a motion to dismiss Bishay’s two-count counterclaim in June of 1996, while the bankruptcy case was still pending, and in response, Bishay sought leave to file an amended answer and counterclaim. On November 8, 1996, this Court (White, J.) allowed Bishay to amend his counterclaim and denied Citizens’ motion for summary judgment without prejudice to renew it as to the amended answer and counterclaim. Count I of Bishay’s amended counterclaim alleges breach of good faith and fair dealing, Count II alleges promissory estoppel, and Count III alleges intentional interference with contractual and advantageous relations. Count IV seeks declaratory relief with respect to the validity of the Forbearance Agreement. Finally, Count V alleges intentional infliction of emotional distress and Count VI alleges numerous violations of General Laws Chapter 93A.
Citizens now moves for partial summary judgment on all of Bishay’s amended counterclaims on the ground that said claims are barred by the doctrine of res judicata and in any event, fail to state claims upon which relief can be granted. Bishay has filed a cross-motion for partial summary judgment on his counterclaims and alternatively, to eliminate the bond requirement for any attorneys fees which may be incurred by Citizens in defending against said counterclaims.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Community Nat’l. Bank v. Dawes, 369 Mass. 550, 553 (1976); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing parly’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
I. CITIZENS’ MOTION FOR SUMMARY JUDGMENT
A. Res Judicata
Citizens first contends that it is entitled to judgment as a matter of law on the ground that most of Bishay’s counterclaims are precluded by the Bankruptcy Court’s April 23, 1996 Confirmation Order. The doctrine of prior adjudication[7] has two aspects. Res judicata, or claim preclusion, dictates that a valid and final judgment rendered by a court of competent jurisdiction bars relitigation between the same parties of any claim that was or might have been raised with respect to the subject matter of the prior litigation. Willett v. Webster, 337 Mass. 98, 102 (1958); Wright Machine Corp. v. Seaman-Andwall Corp., 364 Mass. 683, 688 (1974). Collateral estoppel, or issue preclusion, prevents a party from relitigating a factual or legal issue which was actually decided and essential to a valid and final judgment in prior litigation between the parties. Boyd v. Jamaica Plain Cooperative Bank, 7 Mass.App.Ct. 153, 159-60 (1979); In re Markarian, 298 B.R. 249, 251 (1st Cir. B.A.P. 1997). An issue may be actually litigated and resolved even if it is not explicitly decided as long as it is logically or practically necessary to the court’s final decision. Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 31 (1st. Cir. 1994); Keystone Shipping Co. v. New England Power Co., 109 F.3d 46, 52 (1st Cir. 1997).
Citizens contends that Bishay’s counterclaims allege either defenses to repayment of the Note or wrongful conduct by the bank in connection with negotiating and enforcing the Note and as such, are precluded by the April 23, 1996 Confirmation Order of the Bankruptcy Court, which allowed Citizens’ claim for repayment of the Note in full. It is well established that the *247 normal rules of res judicata and collateral estoppel apply to the decisions of the bankruptcy courts. Katchen v. Landy, 382 U.S. 323, 324 (1966): F.D.I.C. v. Shearson-American Exp., Inc., 996 F.2d 493, 497 (1st Cir. 1993), cert. den., 510 U.S. 1111 (1994). Final orders of the bankruptcy court are res judicata as to all matters that were or could have been litigated before the bankruptcy court.[8] Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 377 (1940); A. Musto Co., Inc. v. Satran, 477 F. Supp. 1172, 1176-77 (D.Mass. 1979) (holding that plaintiff s action for damages against former trustee in bankruptcy for breach of fiduciary duly was barred by prior proceedings in the bankruptcy court dismissing with prejudice the debtor’s petition for removal of the trustee). See also O’Donoghue v. Manning, 331 Mass. 23, 24 (1954) (holding that a suit in equity to establish plaintiffs title to land based on a deed from the trustee in bankruptcy of a former owner was barred by the determination of the bankruptcy court in a prior proceeding that the trustee had no title).
The application of res judicata to a bankruptcy court order confirming a Chapter 11 reorganization plan generally bars later proceedings on all claims and issues concerning the debtor-creditor relationship that were actually raised during the confirmation process as well as those that could have been raised during said process, thus supporting the strong policy of finality in bankruptcy reorganization. Stoll v. Gottlieb, 305 U.S. 165, 172 (1938); Matter of Baudoin, 981 F.2d 736, 739 (5th Cir. 1993); In re DiBerto, 171 B.R. 461, 471-72 (Bank. N.H. 1994).
Nonetheless, Bishay relies on explicit language in the reorganization plan in arguing that the Bankruptcy Court’s April 23, 1996 Confirmation Order does not preclude his counterclaims in the present action. The reorganization plan provides in relevant part:
The Class One Claim[9] is impaired . . . The Debtors’ estates may retain and, by its duly authorized representative(s) settle, release or prosecute, their alleged claims against Citizens arising from the transactions between the Debtors and Citizens and related matters (the “Alleged Claims”). However, the Alleged Claims, until and unless reduced by Final Order to a judgment against Citizens, shall not reduce, delay or otherwise interfere with the timely and full satisfaction of Citizens’ Class One Claim in accordance with this Plan. In addition, until Citizens actually receives ... a release from (and evidence of dismissal with prejudice of) all Alleged Claims, Citizens shall retain its lien on all Estate Assets not disposed of in accordance with this Plan as security for Citizens’ contractual right to reimbursement from the Debtors for Citizens’ costs and anticipated costs of defending the Alleged Claim.
Under a generally accepted exception to the res judicata doctrine, a party’s claims are not precluded by a prior action if the court in that action expressly reserves those claims for later adjudication. Apparel Art Intern. v. Amertex Enterprises, 48 F.3d 576, 586 (1st Cir. 1995); D&K Properties Crystal Lake v. Mutual Life Ins., 112 F.3d 257, 260 (7th Cir. 1997). Thus, a bankruptcy court order confirming a reorganization plan will not bar the debtor from asserting a cause of action against the creditor where the confirmed plan expressly reserves the debtor’s right to litigate post-confirmation claims. D&K Properties Crystal Lake v. Mutual Life Ins., supra at 261; In re Kelly, 199 B.R. 698, 703 (9th Cir. BAP 1996). See also In re DiBerto, supra at 474-75. However, any reservation of a debtor’s right to pursue rights and remedies outside of the bankruptcy proceeding must specifically identify the cause of action reserved. “[A] blanket reservation that seeks to reserve all causes of action reserves nothing. To hold otherwise would eviscerate the finality of a bankruptcy plan containing such a reservation, a result at odds with the very purpose of a confirmed bankruptcy plan.” D&K Properties Crystal Lake v. Mutual Life Ins., supra at 261.
Thus, language in a confirmation plan that the disbursing agent “shall enforce all causes of action existing in favor of the Debtor” was insufficient to reserve the debtor’s claim that a creditor breached its financing contract by raising the interest rate in bad faith. Id. Similarly, language in a confirmed plan which stated “Within thirty days of the Plan Confirmation, the Debtor shall initiate adversary proceedings to contest the amount, allowability, priority and/or secured status of any claims which the Debtor believe are not proper. The Debtors may at the same time bring any counter-claims that they believe proper against any creditors asserting claims” failed to reserve the debtor’s counterclaims for improper modification of the underlying obligation and improper disposal of collateral. In re Kelly, supra at 703-04. Compare In re Hooker Investments, Inc., 162 B.R. 426, 432-34 (Bank. S.D.N.Y. 1993) (holding that res judicata did not bar post-confirmation litigation where confirmed plan expressly stated that creditors had right to assert, settle, compromise or abandon those claims or causes of action listed on “schedule 9 hereto” and schedule identified specific causes of action, both pending and contemplated, against particular parties).
At the time the Bankruptcy Court confirmed the reorganization plan in the present case, Bishay’s counterclaim against Citizens in this Superior Court action asserted only two claims. Count I alleged that Citizens breached its duty of good faith and fair dealing by refusing to subordinate its mortgage on the 1095 Commonwealth Ave. property to a new mortgage loan by Framingham Savings Bank until Bishay agreed to certain terms, including a release of all claims against the bank. Count II further alleged that Citizens’ conduct with respect to the subordination of its mortgage constituted an unfair trade practice in violation of *248 Chapter 93A. These two claims, which are restated as Counts III and VI of Bishay’s amended counterclaim, do not go to the validity of the loan obligation owed to Citizens but rather, constitute independent claims which could be characterized as a set-off to Bishay’s debt. Citizens thus concedes that the Bankruptcy Court intended these two claims to survive the final confirmation order.[10]
Citizens argues, however, that the language permitting Bishay and 1095 Commonwealth Ave. Corp. to assert “their alleged claims against Citizens arising from the transactions between the Debtors and Citizens and related matters” constitutes a blanket reservation insufficient to preserve the remaining four counts of the amended counterclaim for post-confirmation adjudication. This argument is amply supported by the relevant case law, which requires express and specific identification of the individual causes of action reserved. See D&K Properties Crystal Lake v. Mutual Life Ins., supra at 261; In re Kelly, supra at 703-04. The language of the reservation in the reorganization plan is far too broad and vague to prevent the Confirmation Order from constituting res judicata as to all claims other than the two specific claims pending in Superior Court at the time of the Order.
Moreover, this result is supported by the strong policy of finality inherent in the bankruptcy reorganization process. In contrast to Bishay’s original two counterclaims, the additional counts are in the nature of defenses to Bishay’s obligation to repay the debt owing to Citizens. Count I of the amended counterclaim asserts that Citizens committed numerous breaches of its express and implied duties under the Note and Forbearance Agreement; Count II asserts that Citizens is estopped from treating the Note as a demand obligation and collecting the full amount; and Count IV seeks a declaratory judgment that the Note and Forbearance Agreement are extortionate in violation of public policy and are thus null and void, as well as an order requiring Citizens to disgorge all payments made thereunder. These claims in essence seek to litigate the validity of the Note and Forbearance Agreement. However, in allowing Citizens’ claim in full and ordering Bishay and 1095 Commonwealth Ave. Corp. to repay the obligation incurred pursuant to the Note and related instruments, the Bankruptcy Court necessarily determined that these agreements were valid and enforceable. The issues which Bishay seeks to raise in Counts I, II, IV and V of the amended counterclaim were essential to the final and binding judgment entered in the bankruptcy proceeding, and to interpret the plan’s reservation as encompassing such claims would eviscerate the finality of the confirmed plan.
Finally, although Count V of the amended counterclaim alleges an independent claim in the nature of a set-off, that Citizens intentionally inflicted emotional distress on Bishay with respect to the entire loan transaction, such a claim is now barred by the final Confirmation Order because the reorganization plan’s express reservation fails to specifically identify an emotional distress claim as reserved for post-confirmation litigation. Hence, this Court concludes that the Bankruptcy Court’s April 23, 1996 Confirmation Order constitutes res judicata as to Counts I, II, IV and V of Bishay’s amended counterclaim, precluding relitigation of the claims and issues therein. Accordingly, Citizens is entitled to judgment as a matter of law on those Counts. However, this Court further concludes that the Bankruptcy Court Order expressly reserves Counts III and VI for post-confirmation adjudication in the present Superior Court action.
B. General Release
Citizens next contends that Count III and most of Count VI of the amended counterclaim are nonetheless barred by the general release contained in the parties’September 16, 1994 Forbearance Agreement. Paragraph 14 of the Agreement provides:
Lender Liability. You hereby waive, release and forever discharge Citizens and Neworld Bank, and each of their employees, officers, directors, and agents (collectively the “Banks”) from any and all claims, suits, actions or liabilities of any kind which you, Bishay Motors, or any entity controlled by you have arising out of relating to your or their relationships with the Banks arising prior to the date hereof including, without limitation, any allegation that Citizens dealt improperly with respect to the Commonwealth Avenue property.
Citizens contends that this release serves as a defense not only to Count III, which alleges that Citizens interfered with Bishay’s relations with the FDIC and other entities concerning the 1095 Commonwealth Ave. property, but also to all allegations in Count VI concerning events occurring prior to September 16, 1994.[11] Bishay argues, however, that the entire Forbearance Agreement, including the release, is not binding on him because he signed it under economic duress.
To avoid a contract on the basis of economic duress, a party must show that he has been the victim of a wrongful or unlawful act or threat, which has deprived him of his unfettered will, compelling him to make a disproportionate exchange of values. International Underwater Contractors, Inc. v. New England Tel. & Tel. Co., 8 Mass.App.Ct. 340, 342 (1979); Delaney v. Chief of Police of Wareham, 11 Mass.App.Ct. 398, 406, rev. den., 405 Mass. 1204 (1989). Alternatively, a party may establish economic duress by showing that he involuntarily accepted the terms of the other party, under circumstances which permitted no other alternative, and that said circumstances were the result of coercive acts by the other party. International Underwater Contractors, Inc. v. New England Rel. &Tel. Co., supra at 342. It is well established that merely taking *249 advantage of another’s financial difficulty is not economic duress. Further, doing or threatening to do that which one has a legal right to do cannot form the basis of a claim of economic duress, id.; Delaney v. Chief of Police of Wareham, supra at 407. Rather, the plaintiff must show that the defendant’s wrongful and oppressive conduct created the plaintiffs financial difficulties, which the defendant then took advantage of. International Underwater Contractors, Inc. v. New England Rel & Tel. Co., supra at 342.
In the present case, Bishay contends that Citizens committed numerous wrongful acts which left him with no alternative but to agree to Citizens’ demand that he make a disproportionate exchange of value in the September 16, 1994 Forbearance Agreement: the assignment of $18 million in additional collateral to secure an already oversecured loan of $2.4 million plus a general release of all claims against the bank in exchange for Citizens’ withdrawal of its demand for full payment and subordination of its security position on the Commonwealth Ave. property. The coercive acts which Bishay alleges created his financial difficulties, leaving him no alternative but to sign the Forbearance Agreement, are Citizens’ demand for repayment of the entire principal balance of the loan upon default, its failure to give Bishay a reasonable opportunity to cure, its oversecuring of the loan, and its interference with Bishay’s dealings with the FDIC. This Court concludes that Bishay has no reasonable expectation of proving his claim that he executed the September 16, 1994 Forbearance Agreement and general release under economic duress. The undisputed facts reveal that Bishay informed Citizens in April of 1994 that he was stopping his monthly principal payments because the expenses associated with the start-up of a new dealership had left him without available cash flow. Thus, the financial difficulties leading to his default on the Note were of Bishay’s own making rather than caused by Citizens’ conduct. Once Bishay was in default, Citizens was entitled under the terms of the Note to accelerate the debt and demand full payment, and its actions in doing so cannot be deemed to be oppressive or wrongful. Merely taking advantage of another’s financial difficulty and doing that which one has a legal right to do cannot form the basis of a claim of economic duress. International Underwater Contractors, Inc. v. New England Rel. & Tel. Co., supra at 342; Delaney v. Chief of Police of Wareham supra at 407.
Moreover, a release or other contract, the execution of which was induced by duress, is voidable, not void, and the party claiming duress must act promptly to repudiate the agreement or be deemed to have waived his right to do so. Ismert& Associates v. New England Mut. Life Ins., 801 F.2d 536, 547-48 (1st Cir. 1986); In re Boston Shipyard Corp., 886 F.2d 451, 455 (1st Cir. 1989); Vasapolli v. Rostoff, 39 F.3d 27, 35 n.5 (1st Cir. 1994). If the coerced party fails within a reasonable time to contest an agreement allegedly executed under duress, that agreement may be ratified and affirmed. Id. A party may ratify an agreement entered into under duress by intentionally accepting benefits under it; by acquiescing in it for a period of time after having the opportunity to avoid it; or by acting upon or performing under it. In re Boston Shipyard Corp., supra at 455; See also Delaney v. Chief of Police of Wareham supra at 408.
In the present case, Bishay failed to object to the September 16, 1994 Forbearance Agreement until some nine months after its execution, when Citizens finally initiated suit to collect on the Note. Bishay then for the first time raised economic duress as a defense to the Forbearance Agreement and the release contained therein. In the meantime, Bishay accepted the benefits of the agreement by utilizing the extension of time in which to pay back the loan, and by obtaining financing from Framingham Savings, which would not have been possible if Citizens had not agreed to subordinate its mortgage on the Commonwealth Avenue property.
Moreover, Bishay continued to perform under the Forbearance Agreement by making sporadic payment reductions on the loan. Thus, this Court concludes that even if Bishay were able to establish that the Forbearance Agreement was executed under economic duress, he nonetheless ratified the agreement through his subsequent conduct, thereby waiving his right to challenge the release on the grounds of duress. See In re Boston Shipyard Corp., supra at 455 (holding that by accepting payments under contract and continuing to perform for several months until the other party terminated the contract, the plaintiff ratified the contract, waiving any claim of duress); In re A.J. Lane & Co., Inc., 171 B.R. 1, 3 (D.Mass. 1994), aff'd, 50 F.3d 1 (1st Cir. 1995) (holding that a party ratified an agreement allegedly entered into under economic duress by continuing to perform under it).
Accordingly, the general release contained in the parties’ Forbearance Agreement is valid and binding on Bishay, who is precluded from asserting any claim against Citizens arising from the parties’ relationship prior to September 16, 1994. Citizens is thus entitled to judgment as a matter of law on Count III and Subsections a, b, c, d, e, g, h and i of Count VI of Bishay’s amended counterclaim. The remainder of the claims in Count VI present genuine issues of material fact not appropriate for resolution at this time stage of the proceedings.
II. BISHAY’S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
Finally, Bishay moves this Court to enter partial summary judgment in his favor against any claim Citizens may have for attorneys fees incurred in defending against Bishay’s counterclaims, and to strike Citizens’ lien on his property located at 75 Providence Highway in Walpole as well as the alternative $500,000 surety company bond requirement. In the *250 confirmed reorganization plan, the Bankruptcy Court allowed Bishay to proceed with his pending counterclaims in the present action but retained a $500,000 lien on Bishay’s property in favor of Citizens as security for its contractual right to recover attorney’s fees in the event that it successfully defended against Bishay’s counterclaims. The reorganization plan provides in relevant part:
the Debtors may obtain the discharge of such liens within thirty (30) days ... by delivering to Citizens (i) an irrevocable letter of credit (in form and substance reasonably acceptable by Citizens) issued for the benefit of Citizens by a reputable domestic commercial bank in the amount of $500,000 subject to being drawn by Citizens by presentation of a sworn statement that a court of competent jurisdiction has determined that Citizens has the right to recover costs or expenses (including, without limitation, attorneys fees or expenses) incurred in connection with defense of the Alleged Claims in an amount equal to or greater than the amount of such draw. (emphasis added).
Bishay correctly notes that the Bankruptcy Court thus reserved to this Court the power to determine whether Citizens is entitled to recover attorneys fees for successfully defending against Bishay’s counterclaims in the present matter. He then urges this Court to determine that Citizens is barred from recovering fees even if successful in defending against Bishay’s counterclaims on the ground that Citizens’ attempt to fraudulently collect attorneys fees under an undisclosed dual fee arrangement in the bankruptcy proceeding[12] constitutes a wilful breach of the attorneys fees clause in the Note, precluding any further recovery under it.
Bishay’s claim that Citizens’ conduct precludes it from recovering under the contractual provision for attorneys fees is barred by the res judicata effect of both the Bankruptcy Court’s April 23, 1996 Confirmation Order and its January 21, 1997 Order awarding attorneys fees pursuant to Chapter 11, Section 506(b). The Confirmation Order established the $500,000 lien as security for Citizens’ contractual right to recover attorneys fees in the present Superior Court action. Having failed to appeal the Bankruptcy Court’s Confirmation Order, Bishay cannot now be permitted to collaterally attack it in the present summary judgment proceeding.
Further, during the July and October 1996 hearings on Citizens’ contractual right to recover attorneys fees incurred in connection with the bankruptcy proceedings, Bishay repeatedly argued that Citizens’ misconduct with respect to the dual billing arrangement precluded any recovery under the fee reimbursement provision of the Note on public policy grounds. Nonetheless, the Bankruptcy Court concluded that Citizens was entitled to recover reasonable fees under the Note, but only to the extent of the lower rate the bank would have been obligated to pay under the dual billing arrangement. The Bankruptcy Court further determined that the appropriate sanction for Citizens’ misconduct was the reduction of its fee award and the payment of the legal fees incurred by Bishay in the fee dispute hearings. Implicit in and necessary to the Bankruptcy Court’s decision was a determination that Citizens’ misconduct did not preclude its recovery under the Note’s provision for attorneys fees. The Bankruptcy Court’s January 21, 1997 Memorandum and Order thus constitutes res judicata as to the enforceability of the Note’s fee provision, and Bishay is barred from relitigating that issue here by attempting to cast it as a breach of contract claim. Citizens’ misconduct with respect to the dual billing arrangement thus does not constitute a valid ground for denying Citizens attorneys fees incurred in connection with defending Bishay’s counterclaims in the present action. Accordingly, Bishay is not entitled to partial summary judgment sought.
ORDER
For the foregoing reasons, it is hereby ORDERED that Citizens’ motion for summary judgment be ALLOWED as to Counts I, II, III, IV and V of the amended counterclaim. It is further ORDERED that Citizens’ motion for summary judgment be ALLOWED as to Subsections a, b, c, d, e, g, h and i of Count VI but DENIED as to Subsections f, j, k, 1 and m of Count VI.
Finally, it is hereby ORDERED that the defendants’ motion for partial summary judgment be DENIED.

 This term is generally used in the banking industry to mean a loan essentially set up to require repayment of interest only, with no formal principal repayment schedule implemented. According to O’Hurley, granting Bishay an evergreen loan arrangement was unusual under the circumstances because his collateral structure was a pool of corporate business assets and commercial real estate, which is high risk.

 A December 27, 1991 agreement extended repayment until 6/30/92; a July 8,1992 agreement extended repayment until 12/31/92; and a December 30, 1992 agreement extended repayment until 6/30/93.

 U.S. Bankruptcy Docket #95-15015-CJK.

 U.S. Bankruptcy Docket #95-16331.

 The doctrine of prior adjudication is founded on the necessity for finality in litigation. Public policy considerations of fairness and judicial efficiency dictate that there be an end to litigation, that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties. Wright Machine Corp. v. Seaman-Andwall Corp., 364 Mass. 683, 688 (1974).

 The res judicata effect of an order of a bankruptcy court, a federal tribunal, is governed by federal preclusion principles. Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 978 (1st Cir. 1995). However, Massachusetts and the federal courts apply the same tests for res judicata and collateral estoppel.

 Pursuant to Article III of the plan, “Class One, consistís] of the secured claim of Citizens Bank of Massachusetts.”

 This result is confirmed by the fact that on September 4, 1996, the Bankruptcy Court {Kenner, J.) allowed a joint motion by Bishay and the Consummation Agent to appoint Bishay as the representative of the debtors’ estates and to authorize him to employ the firm Brown & Stadfeld as special counsel to pursue the present litigation, Norfolk Superior Court Action No. 95-1312A.

 This would include subsections a, b, c, d, e, g, h and i of Count IV. Subsections f, j, k, 1 and m concern events occurring after 9/16/94.

 See pages 11-12 of this decision, supra, for a discussion of the Bankruptcy Court proceedings with respect to attorneys fees.