Blanchette *v.* School Committee of Westwood.

Doris Blanchette *vs.* School Committee of Westwood.

Norfolk. December 9, 1997. - April 6, 1998.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*School and School Committee,* Arbitration, Collective bargaining, Termination of employment. *Arbitration,* Collective bargaining, School committee, Waiver. *Labor,* Arbitration, Collective bargaining. *Anti-Discrimination Law,* Arbitration, Employment. *Employment,* Retaliation, Sexual harassment, Termination. *Waiver. Judicial Estoppel.*

An employee of a school committee who filed an action alleging violation of G. L. c. 151B, § 4 (4), was not precluded from raising the issue whether the school committee unlawfully retaliated against her for filing a charge of sexual harassment with State and Federal agencies by reason of her having proceeded to arbitration on the same facts pursuant to a collective bargaining agreement that by statute and its own terms was limited to disputes concerning its own interpretation and application [179-183]; nor was the doctrine of waiver applicable to the circumstances [183-184].

The doctrine of judicial estoppel was not applicable in circumstances in which a civil plaintiff was not asserting an inconsistent position from that put forward in an arbitration proceeding under a collective bargaining agreement involving the same factual situation. [184-185]

Civil action commenced in the Superior Court Department on January 10, 1996.

The case was heard by *Barbara A. Dortch-Okara,* J., on a motion to dismiss.

Leave to prosecute an interlocutory appeal was allowed in the Appeals Court by *Christopher J. Armstrong,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Kay H. Hodge (Geoffrey R. Bok* with her) for the defendant.

*Albert W. Wallis (Betty A. Gittes & Daniel S. O'Connor* with him) for the plaintiff.

*Harold L. Lichten & Warren H. Pyle* for the Massachusetts National Employment Lawyers Association & another, amici curiae, submitted a brief.

*Judith M. Neumann* for the Massachusetts Teachers Association, amicus curiae, submitted a brief.

IRELAND, J. The plaintiff, Doris Blanchette, a former employee of the defendant, school committee of Westwood (committee), commenced this action in the Superior Court, alleging that the committee, in violation of G. L. c. 151B, § 4 (4), retaliated against her by evaluating her unfairly and by failing to renew her employment because she had filed a charge of sexual harassment with the Equal Employment Opportunity Commission (EEOC) and the Massachusetts Commission Against Discrimination (MCAD).

The committee moved to dismiss or for summary judgment, contending that the claims raised in this action had been fully and fairly adjudicated in an arbitration proceeding pursuant to the terms of a collective bargaining agreement (agreement) between the Westwood Teachers Association (association) and the committee. The judge denied the motion. A single justice of the Appeals Court granted the committee's petition for leave to prosecute an interlocutory appeal, and we granted the committee's application for direct appellate review. We now affirm.

1. *Facts.* Blanchette began working as a library media specialist at the Thurston Middle School (Thurston) in Westwood in September, 1990. At all relevant times, Blanchette was a member of the association, and the association had an agreement with the committee.

On June 8, 1992, Blanchette complained to the superintendent of schools that she had been sexually harassed by Thurston's principal. The superintendent investigated Blanchette's allegations and similar allegations that other members of the association subsequently made. As a result of the investigation, the principal resigned on July 3, 1992.

On August 7, 1992, Blanchette filed a charge of sexual harassment against the committee with the EEOC and the MCAD. Following an investigation, the EEOC and the MCAD dismissed Blanchette's charge in May, 1994.

In the fall of 1992, Thurston's new principal began formal evaluations of Blanchette's performance, pursuant to the agreement's procedures for awarding tenure. On January 13, 1993, the principal wrote a letter to Blanchette discussing her job performance in mostly negative terms. In March, 1993, the principal completed the formal evaluation procedures and recommended to the committee that Blanchette not receive tenure. Based on this recommendation, the committee did not grant Blanchette tenure and did not renew her employment at the conclusion of the 1992-1993 school year.

2. *The grievances.* The association filed two grievances on behalf of Blanchette. The first grievance was filed on February 11, 1993, and concerned the principal's letter of January 13. The association claimed that the letter violated the agreement's evaluation procedures and was in retaliation against Blanchette because she had filed the sexual harassment charge with the EEOC and the MCAD. After the grievance was denied at each procedural level contained in the agreement, the association invoked its right under the agreement to demand binding arbitration.

The second grievance was filed on May 17, 1993, and concerned the committee's failure to renew Blanchette's contract. The association again claimed that the decision was in retaliation against Blanchette because she had filed the sexual harassment charge. This grievance was also denied, and the association again invoked its right under the agreement to demand binding arbitration. By mutual consent, the two grievances were consolidated into a single arbitration.

3. *The arbitration.* The arbitration hearing began on March 10, 1994. At the outset, the committee contended that the arbitrator did not have authority to hear the association's retaliation claims because the agreement contained no language that prohibited such retaliation. The association argued in response that the agreement incorporated by reference State and Federal antidiscrimination laws, including G. L. c. 151B, § 4 (4), and Title VII of the Federal Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (1994) (Title VII), which prohibit retaliation against an employee for filing a harassment charge.

In an interim ruling issued on May 17, 1994, the arbitrator concluded that the retaliation claim was arbitrable. Relying on explicit references in the agreement to external law, the arbitrator determined that "the parties intended that claims of discrimination be examined in light of such external law, as well as the language of the Agreement."[1]

On February 29, 1996, the arbitrator issued an opinion and

---

[1]Article IX of the agreement, which governs the employee evaluation procedure, provides that "[n]o person evaluated under this system shall be discriminated against because of length of service or because of race, creed, nationality, religion, sex, marital status, age, political affiliation or handicaps *as provided by law*" (emphasis added). Article XXII of the agreement provides that "[n]o employee shall be deprived of any benefit of this Agreement because of race, creed, nationality, religion, sex, marital status, age, political affiliation or handicaps *as provided by law*" (emphasis added). Article XXII goes on to

award in which she determined that the committee had violated the agreement in its evaluation and treatment of Blanchette. On March 25, 1996, the arbitrator issued a final award, consisting of the expungement of various offending documents from Blanchette's personnel file, reinstatement of Blanchette to her former position (in order to redo her third year and be properly and fairly evaluated for tenure), and back pay. The arbitrator offered Blanchette the option, in lieu of reinstatement, of receiving back pay as a lump-sum payment with interest.[2]

4. *The Superior Court action.* On January 10, 1996, Blanchette filed this action in the Superior Court, while the arbitration was still pending. Based on the same facts at issue in the arbitration, Blanchette claimed that the committee had violated her civil rights under G. L. c. 151B, § 4 (4), by retaliating against her for filing a charge of sexual harassment with the EEOC and the MCAD (statutory civil rights claim). The committee moved to dismiss or for summary judgment. Relying on *Alexander* v. *Gardner-Denver Co.*, 415 U.S. 36 (1974), and *Boston* v. *Massachusetts Comm'n Against Discrimination*, 39 Mass. App. Ct. 234 (1995), the judge denied the motion.

5. *Discussion.* The committee argues that the doctrines of preclusion, waiver, and judicial estoppel prevent Blanchette from pursuing her statutory civil rights claim in a judicial forum. We address the arguments under each doctrine separately.

a. *Preclusion.*[3] By statute, parties to a collective bargaining agreement may include grievance procedures "culminating in final and binding arbitration" in their agreement. G. L. c. 150E,

---

provide that "[t]he above shall not apply to the non-renewal or dismissal of non-tenured teachers in which case any rights of such teachers shall be in accordance with the Massachusetts General Laws."

[2]There is no indication in the record as to whether Blanchette has received any of the arbitrator's award.

[3]The judicial doctrines concerning the preclusive effect of a prior adjudication are encompassed under the generic term of "res judicata" and consist of claim preclusion and issue preclusion. See *Bagley* v. *Moxley*, 407 Mass. 633, 636 (1990); *Heacock* v. *Heacock*, 402 Mass. 21, 23 n.2 (1988). Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action. See *Bagley, supra* at 637, quoting *Heacock, supra* at 23. Issue preclusion prevents the relitigation of issues actually adjudicated, and essential to the judgment, in a prior action between the same parties or their privies. See *Bagley, supra* at 636-637; *Heacock, supra* at 23 n.2. See generally 18 C.A. Wright, A.R. Miller, & E.H. Cooper, Federal Practice and Procedure § 4402 (1981 & Supp. 1997).

§ 8. However, the grievance procedures can apply only to disputes "concerning the interpretation or application" of any such agreement. *Id.* Consistent with this statutory treatment, art. XVII of the agreement here states that the grievance procedures "shall be applicable only to questions of interpretation of the terms of this Agreement."

We have held that the prior submission of a claim to arbitration may have a preclusive effect on the same claim in a subsequent court action. See *Miles* v. *Aetna Cas. & Sur. Co.*, 412 Mass. 424, 427 (1992). The inquiry turns, in large part, on whether the "right" or "issue" on which preclusion is sought has been "the product of full litigation and careful decision." *Id.*, quoting *Home Owners Fed. Sav. & Loan Ass'n* v. *Northwestern Fire & Marine Ins. Co.*, 354 Mass. 448, 455 (1968).

In *Alexander* v. *Gardner-Denver Co.*, 415 U.S. 36, 43 (1974), the United States Supreme Court held that an employee who had exhausted his remedies under the grievance procedures of a collective bargaining agreement was not precluded from pursuing a judicial action under Title VII, because the "rights" that concern the interpretation and application of a collective bargaining agreement are distinguishable from the statutory "rights" to be free from discrimination in the workplace under Title VII. *Id.* at 49-50. In particular, the Court stated that:

> "In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums."

*Id.* The Court further noted that "in instituting an action under Title VII, the employee is not seeking review of the arbitrator's decision. Rather, he is asserting a statutory right independent of the arbitration process." *Id.* at 54.

We reached a similar result interpreting our State antidiscrimination statute in *School Comm. of Brockton* v. *Massachusetts Comm'n Against Discrimination*, 377 Mass. 392, 399 (1979),

where we relied on *Alexander* to distinguish rights that are part of a collective bargaining process from individual rights conferred by G. L. c. 151B, § 4, including the right to equal employment opportunities. The Appeals Court discussed this distinction in more detail in *Boston* v. *Massachusetts Comm'n Against Discrimination*, 39 Mass. App. Ct. 234, 238 (1995), and concluded that the "dominant idea underlying the [*Alexander*] line of cases is that when Congress accords a person an independent statutory right (or in the State context, when the Legislature accords such a right), that public right . . . is independent and paramount to the privately arrived at collective bargaining agreement." The Appeals Court then held that submitting a claim of racial discrimination to arbitration under a collective bargaining agreement did not give preclusive effect to the arbitrator's decision in a subsequent discrimination action brought before a court or specialized agency under G. L. c. 151B, § 4. *Id.*

Applying these analyses to the instant case, the arbitrator determined that the committee "violated the Collective Bargaining Agreement with respect to its evaluation and treatment" of Blanchette. However, the arbitrator also expressly recognized that her opinion and award of February 29, 1996, pertained only to "contractual violations." She indicated that there may have been additional "statutory violations" with respect to any "statute(s) prohibiting retaliation or reprisal" against Blanchette, but this was a "legal question" and she did not address it. Consistent with both G. L. c. 150E, § 8, and art. XVII of the agreement, the arbitrator thus did not hear Blanchette's statutory civil rights claim, because that claim did not involve a question of interpreting the agreement. As a result, the rights on which the committee is seeking preclusion have not been the product of full litigation and careful decision. See *Miles, supra.* We thus conclude that the preclusion doctrines do not apply to Blanchette here.[4]

Blanchette is not getting a second bite of the same apple, as the committee contends. Instead, she is seeking single bites from two separate apples as she looks to enforce two different sets of rights in the respective forums that are available to her. Nothing in the preclusion doctrine prevents this.

---

[4]Contrary to the committee's contention, the doctrine of merger cannot apply to Blanchette either. Merger is not a separate doctrine, but merely a subset of claim preclusion. See *Bagley, supra* at 636.

The committee attempts to distinguish this case from *Alexander* on the basis that the collective bargaining agreement in that case contained a general nondiscrimination clause only, while the agreement here explicitly incorporated Federal and State law. However, the committee gives us no reason why such a distinction should be of any importance. Similarly, the committee attempts to distinguish this case because Blanchette prevailed in the arbitration. We find nothing in the language of *Alexander* and its progeny or in our own cases that makes such a distinction, nor has the committee pointed us to any such language.[5]

The committee also urges us to abandon the principles of *Alexander* in favor of *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26-27 (1991), in which the Supreme Court held that an employee's statutory claims under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. (ADEA), could be submitted to arbitration and that such submission precluded a subsequent judicial review of the claims. We do not necessarily follow the interpretation of Federal antidiscrimination statutes in construing G. L. c. 151B, § 4. See *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 440-441 (1995), citing *College-Town, Div. of Interco, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 163 (1987). Were we persuaded that we should do so here, we note first that *Gilmer* appears to strike out in a different direction from *Alexander*.[6] However, the Supreme Court has gone to great lengths to distinguish the two cases and to emphasize their over-all consistency, both in *Gilmer, supra* at 35, and in *Livadas* v. *Bradshaw*, 512 U.S. 107, 127 n.21 (1994).

---

[5]Blanchette also argues that preclusion cannot apply here because she was not a party in the arbitration, nor was she in privity with the actual party (the association). Because of our disposition of the issue, we need not reach this question.

[6]Indeed, in *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991), the Federal District Court had relied on *Alexander* v. *Gardner-Denver Co.*, 415 U.S. 36 (1974), to conclude that the employee's statutory claims were not arbitrable. The United States Court of Appeals for the Fourth Circuit reversed and the United States Supreme Court affirmed. See *LaChance* v. *Northeast Publ., Inc.*, 965 F. Supp. 177, 180-184 (D. Mass. 1997); Cooper, Where Are we Going With *Gilmer*? Some Ruminations on the Arbitration of Discrimination Claims, 11 St. Louis U. Pub. L. Rev. 203, 205-208 (1992); Note, Compulsory Arbitration in the Unionized Workplace: Reconciling *Gilmer, Gardner-Denver* and the Americans with Disabilities Act, 37 B.C. L. Rev. 479, 496-500 (1996).

The distinctions that are of particular relevance here are that *Gilmer* involved an employee who was not covered by a collective bargaining agreement and who had signed an agreement requiring that all disputes be resolved by arbitration. Here, Blanchette was a member of a union covered by a collective bargaining agreement and the agreement, both by statute and by its own terms, was limited to disputes concerning its own interpretation and application. Accordingly, this case more closely follows *Alexander* than *Gilmer*.[7] Even if we were persuaded to follow the interpretation of Federal antidiscrimination statutes in construing G. L. c. 151B, § 4, we would agree with the United States Court of Appeals for the Eleventh Circuit that, although *Gilmer* may have cut back *Alexander*, the latter case remains the applicable standard for cases of this type. See *Brisentine* v. *Stone & Webster Eng'g Corp.*, 117 F.3d 519, 525 (11th Cir. 1997).

b. *Waiver.* We note first that Blanchette did not waive her right to pursue her statutory civil rights claim in a judicial forum merely by being a member of a union that was covered by a collective bargaining agreement. Although a union has the power to waive statutory rights related to collective activity, rights of the kind protected by G. L. c. 151B, § 4, which are of a personal, and not merely economic, nature are beyond the union's ability to bargain away. See *School Comm. of Brockton* v. *Massachusetts Comm'n Against Discrimination*, 377 Mass. 392, 399 (1979), citing *Alexander, supra* at 51.[8]

The larger question here is whether Blanchette, by her own individual actions, waived her right to pursue her statutory civil rights claim in a judicial forum. The committee argues that

___

[7]In *Austin* v. *Owens-Brockway Glass Container, Inc.*, 78 F.3d 875, 886 (4th Cir.), cert. denied, 519 U.S. 980 (1996), the court held that an employee covered by a collective bargaining agreement was required to submit her statutory claims under Title VII to arbitration and was correspondingly precluded from submitting the claims to a judicial forum. However, this case was distinguished by another panel of the court in *Brown* v. *Trans World Airlines*, 127 F.3d 337, 341 (4th Cir. 1997), on the basis that the agreement in *Austin* required that all disputes be submitted to arbitration, not just those involving the interpretation and application of the agreement itself. The court in *Brown, supra* at 342, strongly rejected "an interpretation that obliterates the distinction between statutory and contractual claims" that arose out of the same underlying facts.

[8]The committee does not contest this point and, in fact, acknowledges in its reply brief that a union may not prospectively waive rights under G. L. c. 151B.

Blanchette's voluntary choice to request the association to proceed to arbitration constituted such a waiver, because Blanchette could have proceeded with her statutory civil rights claim in a judicial forum in the first place.[9] However, the committee's argument here is based solely on its contention that Blanchette's statutory civil rights claim was, in fact, brought to arbitration. This contention is incorrect. See *supra* at 180-183. Accordingly, the committee's argument is without merit.

Blanchette may have been able explicitly and voluntarily to waive her right to pursue her statutory civil rights claim in a judicial forum. See *Gilmer, supra* at 26, quoting *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). See also *Alexander, supra* at 52; *Mugnano-Bornstein* v. *Crowell*, 42 Mass. App. Ct. 347, 351-353 (1997). However, there is no evidence that Blanchette made such an explicit and voluntary waiver, nor does the committee contend that she ever did so. We thus conclude that the waiver doctrine does not apply to Blanchette here.[10]

c. *Judicial estoppel.* Judicial estoppel is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding. *Fay* v. *Federal Nat'l Mtge. Ass'n,* 419 Mass. 782, 787 (1995). We have never precisely defined the specific requirements for judicial estoppel and need not do so here. It is sufficient to note that in deciding whether a party should be judicially estopped, "we will look to see whether that party is seeking to use the judicial process in an inconsistent way that courts should not tolerate." *East Cambridge Sav. Bank* v. *Wheeler*, 422 Mass. 621, 623 (1996).

At the arbitration, the association argued that the arbitrator should award the "full range" of both contractual and statutory remedies. From this, the committee concludes that it is inconsistent for Blanchette to argue now that additional remedies could be available in a different legal proceeding.[11]

Logically, the association's argument that the arbitrator should

---

[9]Under art. XVII of the agreement, arbitration could only be initiated on a request from Blanchette, subject to the association's authorization.

[10]We need not reach the question of under what circumstances (if any) an individual may be able to contract away statutory civil rights through a collective bargaining agreement.

[11]The committee's argument here implicates whether the association or Blanchette was the actual party at the arbitration, whether Blanchette and the

award the full range of statutory damages can pertain only to those damages that were within her authority to award in the first place. It was within the arbitrator's authority to award some damages as a result of the committee's violations of the antidiscrimination statutes, because those statutes were incorporated into the agreement. But these "statutory" damages were necessarily limited by G. L. c. 150E, § 8, and art. XVII of the agreement to the impact such violations had on Blanchette's rights under the agreement, because the arbitrator had no authority to hear any other matters. See *supra* at 180. The arbitrator could not and did not hear Blanchette's statutory civil rights claim under G. L. c. 151B, § 4 (4), see *supra* at 180-184, and thus could not award damages with respect to this claim. Neither Blanchette nor the association have argued to the contrary. There is thus no inconsistency in Blanchette's looking now to a different legal proceeding for damages that were not available to her in the arbitration. Because Blanchette is not asserting an inconsistent position, the doctrine of judicial estoppel does not apply here. *Larson* v. *Larson*, 30 Mass. App. Ct. 418, 427-428 (1991). Of course, any remedies that Blanchette may receive from judicial action with respect to her statutory civil rights claim cannot be duplicative of the remedies that she may already have recieved as a result of the arbitration. See *Szalla* v. *Locke*, 421 Mass. 448, 453 (1995), and cases cited.

6. *Conclusion.* For the reasons stated above, the doctrines of preclusion, waiver, and judicial estoppel do not apply to Blanchette in this case, and the committee's arguments fail. The order of the Superior Court denying the committee's motion to dismiss or for summary judgment is affirmed.

*So ordered.*

---

association were in privity, and whether any arguments from the arbitration thus can be attributed properly to Blanchette at all. We once again do not need to answer these questions here. See note 5, *supra*.