TRACY TINKHAM & others[1] vs. JENNY CRAIG, INC., & another[2]
(and a consolidated case).

Nos. 96-P-1333 & 97-P-1306.

Middlesex. December 10, 1997. - October 6, 1998.

Present: JACOBS, GILLERMAN, & SPINA, JJ.

*Practice, Civil,* Summary judgment. *Res Judicata. Judicial Estoppel.*

In an action brought by plaintiff employees alleging constructive discharge,
breach of employment contract, misrepresentation, and promissory estop-
pel, the trial judge properly granted summary judgment in favor of the
defendant employer, where the plaintiffs failed to advance specific facts in
support of their claim of misrepresentation and where the plain terms of
the plaintiffs' employment agreements stated that their employment was at-
will [570-571]; further, the judge properly excluded from consideration
portions of the plaintiffs' affidavits which were in conflict with prior deposi-
tion testimony, conclusory, or not based on personal knowledge [571].
Plaintiff employees, who previously had brought an action against their former
employer alleging various common law contract and tort claims arising out
of their employment, were not barred by the doctrine of claim preclusion
from pursuing gender discrimination claims under G. L. c. 151B in a
subsequent civil action against their employer, in circumstances where the
plaintiffs, who originally had submitted their c. 151B claims to the manda-
tory initial jurisdiction of the Massachusetts Commission Against
Discrimination, were precluded, upon removal of those claims to the
Superior Court, from litigating those claims in the first action. [571-574]
Where plaintiff employees, who had brought an action in the Superior Court
against their former employer alleging various common law contract and
tort claims arising out of their employment, successfully moved for re-
transfer of the case from the Federal District Court to the Superior Court,
based upon their representation that they sought damages below the
$50,000 diversity threshold on each of their claims, the Superior Court
judge correctly concluded that the plaintiffs were judicially estopped from
seeking damages in excess of $50,000 on their claims, including those
discrimination claims which the plaintiffs sought to add to their complaint
subsequent to the transfer. [574-575]

CIVIL ACTION commenced in the Superior Court Department on
January 31, 1994.

[1]Paul Langley, Robert Short, Stephen Tahan, and Richard Garland.
[2]Jenny Craig Weight Loss Centres, Inc.

After removal to and remand from the United States District Court for the District of Massachusetts, a motion to amend the complaint was heard by *James A. McHugh*, J., and a motion for an order estopping the plaintiffs from seeking in excess of $50,000 in damages and a motion for summary judgment were heard by *Wendie I. Gershengorn*, J.

CIVIL ACTIONS commenced in the Superior Court Department on March 10, 1995.

After removal to and remand from the United States District Court for the District of Massachusetts and consolidation with the above action, motions for summary judgment were heard by *Gershengorn*, J.

*Carroll Edward Ayers* for the plaintiffs.

*Arthur G. Telegen* (*Gerald J. Huffman, Jr., & Michael L. Rosen* with him) for the defendants.

JACOBS, J. A Superior Court judge ordered summary judgment for the defendants (Jenny Craig) on a complaint filed by all five plaintiffs and containing several common law contract and tort counts. In that action (*Tinkham I*), the plaintiffs essentially allege that Jenny Craig, their former employer, failed to provide promised opportunities for earnings and advancement, and improperly discharged them or caused them to resign. Later, the same judge entered summary judgment for Jenny Craig on complaints separately filed by three of the plaintiffs (collectively *Tinkham II*) approximately one year after the filing of *Tinkham I*, alleging that Jenny Craig discriminated against them on the basis of gender in violation of G. L. c. 151B. The plaintiffs assert the judge erred in concluding that they failed to state a cause of action in *Tinkham I* and that their claims in *Tinkham II* were barred by operation of the doctrine of res judicata. Central to these appeals is whether that doctrine is applicable in circumstances where the plaintiffs had pursued the substance of *Tinkham II* in a mandatory administrative proceeding commenced before either action was filed. The plaintiffs also appeal from an order estopping them from asserting claims in excess of $50,000.

We summarize the tangled procedural history of these actions. In the spring and summer of 1993, three of the plaintiffs (Langley, Tahan, and Tinkham) filed claims with the Massachusetts Commission Against Discrimination (MCAD) alleging that each, because of his gender, had been discriminated against by Jenny Craig in violation of G. L. c. 151B, § 4. On

January 31, 1994, all five plaintiffs filed the *Tinkham I* complaint in the Superior Court, containing eleven common law tort and contract claims. Jenny Craig removed *Tinkham I* to the United States District Court in May of 1994. After the Federal judge was apprised that some of the plaintiffs might file discrimination claims under G. L. c. 151B, a scheduling order was entered in the Federal court permitting the plaintiffs to amend their complaint by September 16, 1994. On that date, the plaintiffs filed a motion in the Federal court to amend their complaint to add claims under G. L. c. 151B, but requested that the Federal court judge first act on their contemporaneously filed motion to remand the case to the Superior Court grounded on their representation that each of their "demands" was below the $50,000 diversity threshold.[3] The Federal judge ordered the remand, stating that the plaintiffs were "bound by [that] stipulation in the state court with respect to all claims arising under state law" and the case was retransferred to the Superior Court on November 10, 1994. Acting on Jenny Craig's motion, the Federal judge later clarified her order, stating, "I meant what I said when I referred to 'all claims arising under state law.' This refers to pending as well as non-pending state claims. . . ."

In February, 1995, Langley, Tahan, and Tinkham effectively withdrew their cases from the MCAD (see note 8, *infra*) and moved to amend *Tinkham I* in the Superior Court to add the G. L. c. 151B claims. On March 10, 1995, while that motion was pending and opposed by Jenny Craig, purportedly on the basis of the plaintiffs' failure to amend *Tinkham I* in the Federal court, Langley, Tahan, and Tinkham, apparently concerned with the running of the time for bringing their claims, filed independent complaints, comprising *Tinkham II*, in the Superior Court alleging violations of G. L. c. 151B. Shortly thereafter, Jenny Craig removed *Tinkham II* to the Federal District Court on diversity grounds, claiming that the matters in controversy exceeded $50,000. Back in the Superior Court, a judge, in May, 1995, denied the plaintiffs' motion to amend *Tinkham I* subject to renewal in the event that the c. 151B claims pending in

[3]All of the material events before us occurred before the amount in controversy requirement for Federal diversity jurisdiction was increased from $50,000 to $75,000. 28 U.S.C. § 1332(a), as amended through Pub. L. No. 104-317, § 205, 110 Stat. 3847, 3850 (1996). The amendment became effective on January 17, 1997, ninety days after its enactment on October 19, 1996, and is not retroactive. *Central Fiber Corp.* v. *Site Servs. Ltd.*, 962 F. Supp. 1426, 1427 (D. Kan. 1997).

*Tinkham II* in Federal court were dismissed without a decision on the merits. The Federal judge, in turn, treated the *Tinkham II* plaintiffs as bound by their damages representation in *Tinkham I* and remanded *Tinkham II* to the Superior Court on August 9, 1995.[4] On October 26, 1995, the defendants filed their motion for summary judgment in *Tinkham I.* On January 12, 1996, a second Superior Court judge entered an order of consolidation with respect to *Tinkham I* and *Tinkham II,* followed on January 17, 1996, by her order in *Tinkham I* estopping the plaintiffs from seeking more than $50,000 in damages "on all of their state law claims." At the same time, she stated that the plaintiffs could move to amend *Tinkham I* by adding the c. 151B claims as long as the damages claimed did not exceed $50,000. per plaintiff. The plaintiffs did not move to amend the *Tinkham I* complaint. On April 19, 1996, the judge allowed summary judgment for Jenny Craig on the common law tort and contract claims in *Tinkham I.* The plaintiffs requested an entry of judgment in *Tinkham I* and appealed that case to this court. Applying the doctrine of res judicata, the judge, acting on a motion filed in October, 1996, determined that the c. 151B claims in *Tinkham II* were barred by her earlier decision in *Tinkham I* and ordered entry of summary judgment for Jenny Craig in *Tinkham II.*

1. *Summary judgment in Tinkham I.* At the time the judge considered summary judgment, the complaint contained the following counts: count I for constructive discharge (plaintiffs Short and Garland); counts III-VII for breach of employment contract; count VIII for misrepresentation; and count XI for promissory estoppel.[5] The plaintiffs fail to demonstrate any flaw either in the judge's conclusion that they did not advance specific facts to support their claim of misrepresentation and that, in any event, any reliance by them was unreasonable, or in

---

[4]When the *Tinkham II* cases were before her, the Federal judge noted that her previous order of remand applying judicial estoppel had been made "anticipating an amendment to add a claim of sex discrimination." She also noted that the plaintiffs had not objected to her earlier clarification. In the *Tinkham II* order of remand she sought to avoid what she then termed an unwelcome "diet of jurisdictional skirmishing," stating the plaintiffs were bound by the doctrine of judicial estoppel to keep their claims below $50,000. She warned that she "will seriously consider sanctions if the forum-shopping doesn't stop."

[5]Counts II, IX, and X were either previously withdrawn or dismissed and no argument is made as to them.

her related determination that the plain terms of their respective written and integrated employment agreements "state that any oral statement made to the undersigned employee will not affect the at-will status of the employee's employment [and, therefore,] any alleged oral promises . . . would be unenforceable." She also properly concluded that promissory estoppel was inapplicable, essentially because the plaintiffs "understood that there were contingencies attached to future promotion [and that] knowledge . . . along with [their] at-will status, would make any promise to promote illusory. The promises of promotion alleged in this case could not transform the nature of plaintiffs' employment from at-will to employment for a definite period." The plaintiffs further assert error with respect to the summary judgment materials, claiming certain affidavits of the plaintiffs were not considered by the judge. The judge, however, properly excluded those portions of the affidavits which were in conflict with prior deposition testimony, or were conclusory, or were not based on personal knowledge. See *Madsen* v. *Erwin*, 395 Mass. 715, 721 (1985); *O'Brien* v. *Analog Devices, Inc.*, 34 Mass. App. Ct. 905, 906 (1993).

2. *Res judicata.* In allowing Jenny Craig's motion for summary judgment in *Tinkham II*, the judge relied on the judgment in *Tinkham I* and applied the doctrine of claim preclusion. "Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action." *Blanchette* v. *School Comm. of Westwood*, 427 Mass. 176, 179 n.3 (1998). "The doctrine is a ramification of the policy considerations that underlie the rule against splitting a cause of action, and is 'based on the idea that the party to be precluded has had the incentive and opportunity to litigate the matter fully in the first lawsuit.' " *Heacock* v. *Heacock*, 402 Mass. 21, 24 (1988), quoting from *Foster* v. *Evans*, 384 Mass. 687, 696 n.10 (1981). It is settled that a summary judgment may be given preclusive effect. *Wright Mach. Corp.* v. *Seaman-Andwall Corp.*, 364 Mass. 683, 693 (1974).

The determination of whether the plaintiffs in *Tinkham II* had the opportunity and incentive to litigate their c. 151B claims in *Tinkham I* should be addressed from the perspective of fairness and efficient judicial administration since the doctrine of claim preclusion "is not applied rigidly where such interests would not be served." *Gloucester Marine Rys. Corp.* v. *Charles Parisi,*

*Inc.*, 36 Mass. App. Ct. 386, 391 (1994). In that context, we conclude that claim preclusion is not applicable here, because the c. 151B claims were not split off in the usual sense from the *Tinkham I* complaint and because the plaintiffs' failure to add the c. 151B claims to *Tinkham I* is attributable not only to their own hapless maneuvering, but also to the somewhat misleading procedural sparring of Jenny Craig.

Well before the filing of *Tinkham I*, the *Tinkham II* plaintiffs submitted claims of gender discrimination to the mandatory initial jurisdiction of the MCAD pursuant to G. L. c. 151B.[6] See *Charland* v. *Muzi Motors, Inc.*, 417 Mass. 580, 585 (1994). When those plaintiffs joined the other plaintiffs (Garland and Short) in filing *Tinkham I* approximately one-half year later, they were well within their rights to continue to subject their statutory claims of gender discrimination to administrative scrutiny and had no reason to believe they would be precluded from adding those claims, in their entirety, to their common law action. After the removal of *Tinkham I* to the Federal court and its retransfer to the Superior Court, that action remained in unresolved parallel status with the earlier filed and undecided administrative claims before the MCAD. That parallel status changed in form but not in essence, when Langley, Tahan, and Tinkham requested that their complaints before the MCAD be removed, resulting in the dismissal, without prejudice, of their administrative claims.[7] They then moved to add those c. 151B claims to *Tinkham I*, only to be opposed by Jenny Craig on exaggerated grounds that the motion violated the order of the Federal judge which imposed a time limit for amendment in that court. It is clear from the record that the Federal judge had not prohibited, and in fact had anticipated, such an amendment when *Tinkham I* was remanded to the Superior Court. In her

---

[6]General Laws c. 151B, § 9, provides in relevant part: "Any person claiming to be aggrieved by a practice made unlawful under this chapter . . . may, at the expiration of ninety days after the filing of a complaint with the commission . . . bring a civil action for damages or injunctive relief or both in the superior or probate court . . . ."

[7]The request for removal was preceded by a motion to dismiss filed with the MCAD in which Jenny Craig, pointing to gender discrimination allegations in the plaintiffs' complaint in *Tinkham I*, argued that Langley, Tahan, and Tinkham had "effectively fil[ed] the equivalent of a chapter 151B action in Superior Court." This claim contrasts sharply with a later statement in a memorandum filed in support of Jenny Craig's motion for summary judgment in *Tinkham I* that the "plaintiffs do not assert claims of sex discrimination under state or federal law."

clarification of the estoppel aspect of that remand order issued approximately two months before the filing of the plaintiffs' motion to amend, she expressly referred to "pending as well as non-pending state claims." It was after this opposition to their motion to amend that Langley, Tahan, and Tinkham filed the complaints comprising *Tinkham II*. In these circumstances, we do not view *Tinkham II* as a further or successive proceeding which must be barred under the doctrine of res judicata. In no sense can the earlier pursued c. 151B claims be treated as the product of claim splitting, or as an attempt to "preserve the right to bring a second action after the loss of the first, merely by having circumscribed and limited the theories of recovery opened by the pleadings in the first," *Mackintosh* v. *Chambers*, 285 Mass. 594, 597 (1934), or as a choice "to hold back one theory to await the outcome of different theories." *Bendetson* v. *Building Inspector of Revere*, 36 Mass. App. Ct. 615, 621 (1994). See *Brunson* v. *Wall*, 405 Mass. 446, 450 (1989) ("the MCAD qualifies as a 'court of competent jurisdiction' "). The parallel and linked status of *Tinkham I* and *Tinkham II* is further underscored by the consolidation order entered during the pendency of Jenny Craig's first motion for summary judgment.[8]

Moreover, the quick removal of *Tinkham II* to the Federal court, coupled with the qualified denial of the motion to amend, effectively prevented any joinder of the c. 151B claims with *Tinkham I* until *Tinkham II* was remanded to the Superior Court. Although the motion to amend *Tinkham I* could have been renewed during the approximately two month period between remand of *Tinkham II* and the filing by Jenny Craig of the motion for summary judgment in *Tinkham I*, there was little reason

---

[8]On January 12, 1996, the judge entered an "order of consolidation" in both cases stating that each was "hereby consolidated" with the others. In her memorandum of decision in *Tinkham II*, the judge, relying largely on *Lumiansky* v. *Tessier*, 213 Mass. 182 (1912), ruled that "unless a court expressly orders that actions be 'merged' into a single action, a consolidation order only serves to combine otherwise separate causes of action for convenience and economy in administration." In light of our decision, we need not address whether the cases were fused by the cryptic consolidation order or the possible effect of a merger upon the application of the doctrine of res judicata to the c. 151B claims. The order, in any event, buttresses the conclusion that *Tinkham I* and *Tinkham II* were parallel actions pending in the same court before the same judge and that the summary judgment in *Tinkham I* is not a decision in an *earlier* litigation entitled to preclusive effect upon a *later* proceeding.

to do so given Jenny Craig's opposition to amendment and the then unsettled status of the Federal court's estoppel order. Further, any attempt by the plaintiffs to add the c. 151B claims to *Tinkham I* following the Superior Court judge's estoppel order ran the risk of being treated as an acceptance of the damages cap.

In any event, Jenny Craig should not be permitted to gain a dispositive advantage from the plaintiffs' failure to add the c. 151B claims to *Tinkham I* after vigorously opposing such amendment. "There would be something anomalous about giving a defendant the benefit of claim preclusion when that defendant took steps calculated to assure the exclusion of the claim from the prior litigation." *Roche* v. *Roche*, 22 Mass. App. Ct. 306, 311 (1986), citing Restatement (Second) of Judgments § 26 comment j (1982). Accordingly, we reverse the summary judgment in *Tinkham II* and reinstate the complaints in that action.

3. *Judicial estoppel.*[9] "Judicial estoppel is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding." *Blanchette* v. *School Comm. of Westwood*, 427 Mass. at 184. Although the doctrine has been considered and applied in Massachusetts, its specific requirements have never been precisely defined. See *Fay* v. *Federal Natl. Mort. Assn.*, 419 Mass. 782, 788 (1995). See also *East Cambridge Sav. Bank* v. *Wheeler*, 422 Mass. 621, 623 (1996). We need not do so here because the *Tinkham II* plaintiffs do not contest the applicability of the concept of judicial estoppel as matter of law; they merely argue that the Superior Court judge was factually incorrect when she concluded that they "were and still are 'playing fast and loose' with the jurisdiction of the courts." They contend that they consistently have represented their c. 151B claims as being well in excess of $50,000 and merely were pursuing their right to a determination by the MCAD at the time that *Tinkham I* had been removed to the Federal court. Whatever the validity of that contention, it fails to address the plaintiffs' jurisdictional tactics in that court.

---

[9]In the context of our reversal of the summary judgment in *Tinkham II*, the judicial estoppel order could be viewed as interlocutory. However, neither party raises this point and, since the issue has been fully briefed, we address it in the interest of judicial economy. See *Ciszewski* v. *Industrial Acc. Bd.*, 367 Mass. 135, 142 (1975), and cases cited.

While the plaintiffs were seeking to have *Tinkham I* remanded to the Superior Court, arguing that their common law claims did not exceed $50,000, they, at the same time, sought to reserve the right to amend their complaint to add their c. 151B claims. Jenny Craig, apparently attempting to keep the case in the Federal court, argued that it would be "contrary to . . . notions of judicial economy" if discovery were to proceed prior to such amendment. In the course of conferences addressing the issues of jurisdiction and possible addition of the c. 151B claims, the plaintiffs apparently made statements to the Federal judge which, at a later hearing, she described as a "commitment," that if their respective discrimination claims arising under state law were added to the litigation, they would be below the $50,000 diversity threshold.[10] Given this background, we find no error in the Superior Court judge's conclusion that the "[p]laintiffs had, in effect, made a bargain with the federal court not to seek greater tha[n] $50,000 per plaintiff in state court on their state law claims," or in her determination that the Federal judge "was misled when plaintiffs failed to inform her of the full extent of the damages they intended to claim," or in her ultimate conclusion that the plaintiffs "were and still are 'playing fast and loose' with the jurisdiction of the courts."

Accordingly, the summary judgment dismissing *Tinkham I* is affirmed, the summary judgment dismissing *Tinkham II* is reversed, and the order estopping the plaintiffs from asserting claims in excess of $50,000 per plaintiff in *Tinkham II* is affirmed.

*So ordered.*

---

[10]At that later hearing conducted in connection with the removal of *Tinkham II*, the Federal judge, responding to the statement of plaintiffs' counsel that "at no time have we said that [the] discrimination claims were less than $50,000 . . ." said, "[y]ou knew at the time you were likely to file discrimination claims . . . . We talked about it in at least three conferences. That's why we had a Motion to Amend date. You told me that it was a likelihood but you weren't positive as to whether or not you were going to file sexual discrimination claims. . . . At which point you could have made the cut one way or another. And then you still said 'I want to go to state court rather than to amend that point.' So under what possible logic could I have said go back to state court only to allow you to amend to assert over fifty to come right back here? . . . That's why I did the order and then the clarification. I was referring to state law claims . . . [b]ut no one ever filed a Motion for Reconsideration on your part, nothing. So . . . you're stuck with the representation that on the state claims you're not going to be over $50,000."