Brassard, J.
This is an action pursuant to G.L.c. 150C, §2(b), to seek a stay in connection with a demand for arbitration filed with the American Arbitration Association. The plaintiff alleges that the defendant, a labor union, waived its right to arbitration when two of its aggrieved members filed federal court actions alleging, among other claims, violations of the Massachusetts Whistleblower Statute, G.L.c. 149, *127 §185. The defendant now moves for summary judgment. The plaintiff, in turn, cross moves for judgment on the pleadings or, in the alternative, for summary judgment. For the forgoing reasons, the defendant’s Motion is ALLOWED, and the plaintiffs Cross Motion for summary judgment is DENIED.
BACKGROUND
The plaintiff, the Ciiy of Everett (“the Ciiy”), is a public employer pursuant to G.L.c. 150E, §1. The defendant, the International Brotherhood of Police Officers, Local 633 (“IBPO” or “the union”), is the exclusive bargaining representative, pursuant to G.L.c. 150E, of a bargaining unit of police patrolmen that the City employs. The City and the IBPO are parties to a collective bargaining agreement[1] that provides for grievance arbitration of the disciplinary suspension of police patrolmen. Section 3A.1 of the collective bargaining agreement provides that “[ejmployees who have completed the probationary period shall not be disciplined or discharged except for just cause.” At all relevant times, the City employed Officer Alan Varone (“Varone”) and Officer Dennis O’Donnell (“O’Donnell”) as police patrolmen, and the officers are considered “employees” under the collective bargaining agreement.
During the spring of 2001, the Ciiy disciplined Officers Varone and O’Donnell for several alleged infractions. In the month of April 2001, the City imposed a three-day suspension without pay and, later, a four-tour suspension without pay on O’Donnell. The City charged Varone with the violation of department rules and regulations in March 2001, and on May 3, 2001, the City imposed a twenty-shift suspension without pay on Varone. The IBPO filed timely demands for arbitration related to the suspensions on behalf of both Varone and O’Donnell, claiming the City imposed the suspensions without just cause. On March 21, 2002, both Varone and O’Donnell filed complaints in the United States District Court for the District of Massachusetts. Among the defendants was the City. The officers asserted four causes of action: violations of the First Amendment of the United States Constitution; the Massachusetts Whistleblower Statute, G.L.c. 149, §185; the Massachusetts Civil Rights Act; and Massachusetts common law.
An arbitration demanded on behalf of Varone commenced on May 30, 2002. The arbitrator, Marc Greenbaum, relied on a provision in the Whistleblower Statute that limits a grievant’s recovery in arbitration should he seek a judicial remedy and directed the City to seek a stay of arbitration in the Superior Court. The arbitration on behalf of O’Donnell has been held in abeyance and awaits the resolution of the instant case.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and, if viewing the entire record in the light most favorable to the non-moving party, the moving party demonstrates it is entitled to judgment as a matter of law. Mass.R.Civ.P. 56; Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 711 (1991). See also Parent v. Stone & Webster Eng. Corp., 408 Mass. 108, 112 (1990) (reasoning that the moving party bears the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law). A party moving for summary judgment that does not bear the burden of proof at trial may demonstrate the absence of a trial issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Tech. Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. at 716. The nonmoving party cannot defeat the motion for summary judgment by resting on his or her pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). The court may consider the pleadings, affidavits, answers to interrogatories, depositions, and exhibits submitted in arriving at its conclusion on the motion. Mass.R.Civ.P. 56(c). A party may present matters outside of the pleadings when moving for judgment on the pleadings; however, if the court does not exclude these materials, the motion is treated as one for summary judgment. Mass.R.Civ.P. 12(c). Because this court considered the collective bargaining agreement between the parties in deciding this motion, both parties’ motions are treated as those for summary judgment. This court concludes in the instant case that the IBPO is entitled to judgment as a matter of law.
The parties do not dispute the material facts in this matter; therefore, summary judgment for one of the parties is appropriate. This courtis authorized to order a stay of an arbitration that has commenced or is threatened if the court finds that the grievance is not substantively arbitrable. G.L.c. 150, §2(b) (expressing a preference for arbitrating labor disputes and permitting stays only where there is either no “agreement to arbitrate” or “the claim sought to be arbitrated does not state a controversy covered by the provision for arbitration”); Sch. Comm. of Boston v. Boston Teachers Union, Local 66, 378 Mass. 65, 70 (1979). An agreement to arbitrate a dispute that cannot lawfully be the subject of arbitration is “equivalent to the absence of a controversy covered by the provision for arbitration.” Berkshire Hills Reg’l Sch. Dist. Comm. v. Gray, 5 Mass.App.Ct. 686, 690 (1977).
The Massachusetts legislature has limited the extent to which public employees may invoke arbitration. The words of a statute are the main source from which a court will ascertain legislative intent, and when the text of a statute is clear and unambiguous, the language will be construed in accordance with its plain and ordinary meaning. Foss v. Commonwealth, *128 437 Mass. 584, 586 (2002); Weitzel v. Travelers Ins. Co., 417 Mass. 149, 153 (1994) (“Where the language of a statute is plain, the courts enforce the statute according to its wording”). The Massachusetts Whistleblower Statute, G.L.c. 149, § 185(f), provides that when an aggrieved public employee institutes a private civil action alleging that his employer’s actions violated section 185, the employee waives the rights and remedies he would have received under any collective bargaining agreement. Id. An employee under this statute is “any individual who performs services for and under the control and direction of an employer for wages or other remuneration.” G.L.c. 149, §185. This provision effectively eliminates any exception the common law allowed individuals to both litigate and arbitrate issues arising from the same events or set of facts.[2]
This court’s inquiry focuses on whether a union may proceed with arbitration when the employee the union represents has filed a separate judicial action against the employer for violation of the Whistleblower Statute. The Whistleblower Statute plainly precludes the employee, but not the union, from pursuing, through arbitration, his rights under a collective bargaining agreement once he has filed a civil action in court. Therefore, for the union to continue with this arbitration, it must have rights and remedies — or interests — independent of the aggrieved member it represents.
The history and framework of unions suggests that they have interests and goals independent of their members. Unions represent employees “for the purposes of negotiating and enforcing the terms of the bargaining agreement.” Black-Clawson Co., v. Int’l Ass’n of Machinists Lodge 355, 313 F.2d 179, 184 (2d Cir. 1962). All unions bear a duly to fairly represent their members; additionally, unions also act “primarily for the collective good of all employees.” Leahy v. Local 1526, Am. Fed’n of State, County & Mun. Employees, 399 Mass. 341, 349 (1987); accord Vaca v. Sipes, 386 U.S. 171, 182 (1967). Cases may arise where the interests of the individual employee may be subordinated to the collective interests of all the employees in the bargaining unit. Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974). In this case, the IBPO urges that it wishes to pursue the arbitration to protect the collective interest of all the employees in the bargaining unit.
The collective bargaining process includes more than the negotiations that lead to the agreement; it also includes the “resolution of grievances pursuant to the collective bargaining agreement.” Ghiglione v. School Comm. of Southbridge, 376 Mass. 70, 73 (1978). In fact, “(t]he processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement . . . The grievance procedure is, in other words, a part of the continuous bargaining process.” United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581 (1960). For the union, the grievance process is an assurance that similar grievances will be treated consistently and that “major problem areas in the interpretation of the collective bargaining contract can be isolated and perhaps resolved.” Vaca v. Sipes, 386 U.S. at 191. It is clear from the case law that as a party to the collective bargaining agreement, the union has an interest in establishing the meaning and content of the agreement and, therefore, an interest in the grievance process.
Officers Varone and O’Donnell each independently initiated arbitration pursuant to Section 12.8 of the collective bargaining agreement, which provides for arbitration as follows:
Any matter involving the suspension, dismissal, removal, or termination of any employee who has completed his probationary period shall not be subject to arbitration unless the employee and the Union elect arbitration as the exclusive remedy pursuant to MGL Chapter 150E, Section 8. The written election to arbitrate shall shall [sic] constitute the grievance hereunder.[3]
Arbitration is, at its core, “a matter of contract . . .” Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241 (1962). To determine who has the power to seek arbitration, courts look to the collective bargaining agreement. See Vaca v. Sipes, 386 U.S. at 186. The agreement at issue does not require arbitration to resolve matters concerning suspension, dismissal, removal or termination unless both the employee and union so elect. The Ohio Appeals Court has recently considered whether the union or employee was the interested party to grievance and arbitration proceedings. Leon v. Boardman Township, No. 01CV92, 2002 WL 31242236 (Ohio Ct.App. Sept. 30, 2002) (reasoning that the union, and not the aggrieved employee, was the party to the arbitration and had standing to vacate an arbitration decision); Geneva Patrolmen’s Ass’n v. City of Geneva, 473 N.E.2d 1317 (Ohio Ct.App. 1984) (reasoning that the aggrieved employee, and not the union, was the party to the arbitration). To make this determination, the Court examined who controlled the grievance and arbitration process and concluded that the party who controlled the processes was the party to the proceeding. Leon v. Boardman Township, at *3; Geneva Patrolmen’s Ass’n v. City of Geneva, 473 N.E.2d at 1319. In the instant case, the arbitration agreement requires both the union and the individual employee to assent to the arbitration process. The logical conclusion is that both the aggrieved employee and the union are interested parties to the arbitration.
Undoubtedly, individual employees have an interest in the arbitration proceedings commenced on their behalf; however, once the union commences arbitration on behalf of an employee, the union, too, possesses an interest in the outcome. In cases where the *129 aggrieved employee has attempted to vacate an arbitrator’s decision, the United States Supreme Court has considered the union, and not the employee, as the party to the arbitration, reasoning that upon submitting his matter to grievance proceedings and arbitration, the employee “called upon the collective power of his or her fellow members and ceased to stand alone.” Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 564 (1976). Likewise, Officers Varone and O’Donnell had no ability to submit their grievances to arbitration without the IBPO’s participation, and by pursuing arbitration, the collective members of the IPBO now have an interest in the proceeding.
An arbitrator’s award may, of course, result in a variety of remedies, such as back pay or expungement of discipline from personnel records. Such remedies directly affect the aggrieved employee. Because the aggrieved employees have commenced civil actions in federal court, Officers Varone and O’Donnell may not be awarded any such remedy or receive any other direct benefit from the arbitration between the City of Everett and the IBPO. The IBPO may, however, pursue the arbitration to give “meaning and content” to the collective bargaining agreement for the benefit of all its members.[4]
ORDER
For all of the reasons contained herein, it is ORDERED that the defendant’s Motion for Summary Judgment be ALLOWED. It is further ORDERED that the plaintiffs Cross-Motion for Summary Judgment be DENIED.

 The defendant has submitted the following agreements between the City of Everett and the International Brotherhood of Police Officers, Local 633; (1) Effective July 1, 1988, and Expiring June 30, 1991; (2) Effective July 1, 1993, and Expiring June 30, 1995; (3) Effective July 1, 1995, and Expiring June 30, 1997; (4) Effective July 1, 1997, and Expiring June 30, 2000. The incidents that allegedly violate the collective bargaining agreement occurred in 2001. hi its analysis, this court relied on these agreements because neither party disputes that the agreements are not controlling here, and the critical language regarding arbitration has not been superseded or amended.

 “The prior submission of a claim to arbitration may have a preclusive effect on the same claim in a subsequent court action.” Blanchette v. School Comm. of Westwood, 427 Mass. 176, 180 (1998). In determining whether a claim has been precluded, the court examines whether the “right” or “issue” that is in controversy has been previously litigated with full and careful consideration. Id., citing Miles v. Aetna Cas. & Sur. Co., 412 Mass. 424, 427 (1992). Federal and Massachusetts courts have distinguished the rights and remedies arising from collective bargaining agreements from the statutory rights and remedies that federal and state anti-discrimination statutes afford. Alexander v. Gardner-Denver Co., 415 U.S. 36, 43 (1974) (reasoning that institution of an action under Title VII is an assertion of a right independent of the rights sought in the arbitration process); Blanchette, 427 Mass. at 181 (finding that G.L.c. 151B protects rights independent of the rights provided in arbitration); Boston v. Massachusetts Comm’n Against Discrimination, 39 Mass.App.Ct. 234, 238 (1995) (same). Unlike the Whistleblower Statute, Title VII and chapter 15 IB do not require a complaining employee to waive the rights afforded by a separate collective bargaining agreement.

 G.L.c. 150E, §8, provides: “The parties [to a collective bargaining agreement] may include in any written agreement a grievance procedure culminating in final and binding arbitration to be invoked in the event of any dispute concerning the interpretation or application of such written agreement.”

 An arbitration conducted in accordance with these conditions will undoubtedly involve the employees as they will likely be witnesses. In that sense, the arbitration will meet the substance of the collective bargaining agreement to the effect that both the employees and the union are participants. Such an arbitration will also permit the union to pursue its own interests.